IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| SHERMAINE WALKER, Individually,<br>and as Administrator of the Estate<br>of Marques Davis, deceased.<br>1615 Harding<br>Wichita, KS 67208<br><br>and<br><br>I. D. F., a minor, by and through her<br>Next Friend and natural mother, Erika Flowers.<br>7450 E. 32nd St. North, Apt. 703<br>Wichita, Kansas 67226<br><br>        Plaintiffs,<br><br>v.<br><br>CORIZON HEALTH INC. f/k/a PRISON<br>HEALTH SERVICES, INC.<br>     Serve Registered Agent:<br>     The Corporation Company, Inc.<br>     112 SW 7th Street, Suite 3C<br>     Topeka, KS 66603<br><br>     and<br><br>PAUL CORBIER, M.D.<br>Corizon Health, Inc.<br>     Serve at Place of Employment:<br>     Hutchinson Correctional Facility: Infirmary<br>     500 Reformatory St.<br>     Hutchinson, KS 67501<br><br>     and<br><br>SOHAIB MOHIUDDIN, M.D.<br>Corizon Health, Inc.<br>     Serve at Place of Employment:<br>     Hutchinson Correctional Facility: Infirmary<br>     500 Reformatory St.<br>     Hutchinson, KS 67501<br><br>     and | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. |

1

KARL SAFFO, M.D.                                      )
Corizon Health, Inc.                                  )
    Serve at Place of Employment:                     )
    Hutchinson Correctional Facility: Infirmary  )
    500 Reformatory St.                               )
    Hutchinson, KS 67501                              )
                                                      )
    and                                               )
                                                      )
JOHN or JANE DOE, DIRECTOR OF NURSING )
Corizon Health, Inc.                                  )
    Serve at Place of Employment:                     )
    Hutchinson Correctional Facility: Infirmary  )
    500 Reformatory St.                               )
    Hutchinson, KS 67501                              )
                                                      )
    and                                               )
                                                      )
HEATHER UNGEHEUR, APRN                               )
Corizon Health, Inc.                                  )
    Serve at Place of Employment:                     )
    Hutchinson Correctional Facility: Infirmary  )
    500 Reformatory St.                               )
    Hutchinson, KS 67501                              )
                                                      )
    and                                               )
                                                      )
NANCY CISKEY, APRN                                   )
Corizon Health, Inc.                                  )
    Serve at Place of Employment:                     )
    Hutchinson Correctional Facility: Infirmary  )
    500 Reformatory St.                               )
    Hutchinson, KS 67501                              )
                                                      )
RHONDA DURANT, APRN                                  )
Corizon Health, Inc.                                  )
    Serve at Place of Employment:                     )
    Hutchinson Correctional Facility: Infirmary  )
    500 Reformatory St.                               )
    Hutchinson, KS 67501                              )
                                                      )
    and                                               )
                                                      )
DEBRA LUNDRY, RN                                     )
Corizon Health, Inc.                                  )
    Serve at Place of Employment:                     )

2

Hutchinson Correctional Facility: Infirmary )
500 Reformatory St. )
Hutchinson, KS 67501 )
)
and )
)
JENNIFER HELUS, RN )
Corizon Health, Inc. )
    Serve at Place of Employment: )
    Hutchinson Correctional Facility: Infirmary )
    500 Reformatory St. )
    Hutchinson, KS 67501 )
)
and )
)
SARAH MENDOZA, RN )
Corizon Health, Inc. )
    Serve at Place of Employment: )
    Hutchinson Correctional Facility: Infirmary )
    500 Reformatory St. )
    Hutchinson, KS 67501 )
)
and )
)
BARBARA DICKERSON, RN )
Corizon Health, Inc. )
    Serve at Place of Employment: )
    Hutchinson Correctional Facility: Infirmary )
    500 Reformatory St. )
    Hutchinson, KS 67501 )
)
and )
)
KAREN DENNIS, RN )
Corizon Health, Inc. )
    Serve at Place of Employment: )
    Hutchinson Correctional Facility: Infirmary )
    500 Reformatory St. )
    Hutchinson, KS 67501 )
)
and )
)
KELLY FRENCH, RN )
Corizon Health, Inc. )
    Serve at Place of Employment: )
    Hutchinson Correctional Facility: Infirmary )

3

```
        500 Reformatory St.                          )
        Hutchinson, KS 67501                         )
                                                     )
        and                                          )
                                                     )
JENNIFER VEST, RN                                    )
Corizon Health, Inc.                                 )
        Serve at Place of Employment:               )
        Hutchinson Correctional Facility: Infirmary )
        500 Reformatory St.                          )
        Hutchinson, KS 67501                         )
                                                     )
                Defendants.                          )
```

## COMPLAINT

COME NOW Plaintiffs, Shermaine Walker and I.D.F., a minor, by and through her Next

Friend and mother Erika Flowers, and for their allegations common to all counts of this

Complaint seek redress for acts committed by all above-named Defendants under color of law.

Defendant's actions and inactions deprived Plaintiffs' Decedent of his rights (1) under the Eighth

Amendment of the United States Constitution, in violation of 42 U.S.C. § 1983, and (2) under

the Wrongful Death Statute of the State of Kansas, K.S.A. § 60-1901. Plaintiffs seek

compensatory and punitive damages.

## PLAINTIFFS

1.      At all material times, Plaintiff Shermaine Walker is and was the surviving natural

mother of Decedent Marques Davis and an heir at law of the deceased. Plaintiff Shermaine

Walker is a citizen of the United States and the State of Kansas. She resides at the above

captioned address in Wichita, Sedgewick County, Kansas in the District of Kansas. Plaintiff

Shermaine Walker is a proper party to bring this suit for the wrongful death of Decedent

Marques Davis pursuant to K.S.A. §§ 60-1901 – 1905.

4

2.    At all material times, Plaintiff I.D.F., a minor, is and was the surviving natural daughter of Decedent Marques Davis and an heir at law of the deceased. Plaintiff I.D.F. is a citizen of the United States and the State of Kansas. She resides with her natural mother and Next Friend, Erika Flowers, at the above captioned address in Wichita, Sedgwick County, Kansas in the District of Kansas. Plaintiff I.D.F. is a proper party to bring this suit for the wrongful death of Decedent Marques Davis pursuant to K.S.A. §§ 60-1901 – 1905.

3.    Erika Flowers is the biological mother of minor I.D.F., and serves as her Next Friend in this action, pursuant to Kansas Supreme Court Rule § 60-217(c).

4.    At all material times, Decedent Marques Davis was an inmate at Hutchinson Correctional Facility, 500 Reformatory Street, Hutchinson, Kansas 67501 and at the time of his death on April 13, 2017. The Estate of Marques Davis is a party to this action by and through Plaintiff Shermaine Walker in her capacity as Special Administrator of the Estate of Marques Davis in accordance with K.S.A. § 60-1801.

## DEFENDANTS

5.    At all material times, Defendant Corizon Health, Inc. formerly known as Prison Health Services, Inc. ("Corizon") is a Delaware Corporation duly organized and existing under the laws of the State of Delaware and engaged in providing medical care and treatment to persons afflicted with illness and disease in correctional facilities such as those purported to have been provided to Decedent at Hutchinson Correctional Facility.

6.    At all material times, Defendant Corizon was and is conducting business in the State of Kansas. Additionally, Defendant Corizon has contracted and continues to contract with the Kansas Department of Corrections to provide medical care to inmates.

7.    At all material times, Defendant Corizon was acting under color of state law.

5

8.     Based upon information and belief, Defendant Paul Corbier, M.D., a licensed physician, was at all material times the regional medical director for Defendant Corizon, and was responsible for the medical policies, customs and procedures used by Defendant Corizon's employees, servants and/or agents working in Hutchinson Correctional Facility. At all material times, Defendant Paul Corbier, M.D. was acting under color of law. Based upon information and belief, Defendant Paul Coriber, M.D. is a citizen and resident of the State of Kansas.

9.     Based upon information and belief, Defendant Sohaib Mohiuddin, M.D., a licensed physician, is a Corizon employee who at all material times was working in Hutchinson Correctional Facility. At all material times, Defendant Sohaib Mohiuddin, M.D. was acting under color of state law. Based upon information and belief, Defendant Sohaib Mohiuddin, M.D. is a citizen and resident of the State of Kansas.

10.     Based upon information and belief, Defendant Karl Saffo, M.D., a licensed physician, is a Corizon employee who at all material times was working in Hutchinson Correctional Facility. At all material times, Defendant Karl Saffo, M.D. was acting under color of state law. Based upon information and belief, Defendant Karl Saffo, M.D. is a citizen and resident of the State of Kansas.

11.     Based upon information and belief, Defendant John or Jane Doe, nursing director, was at all material times the nursing director for Defendant Corizon, and was responsible for the nursing policies, customs and procedures used by Defendant Corizon's employees, servants and/or agents working in Hutchinson Correctional Facility.  At all material times, Defendant John or Jane Doe was acting under color of state law. Based upon information and belief, Defendant John or Jane Doe is a citizen and resident of the State of Kansas.

12.    Based upon information and belief, Defendant Heather Ungeheur, APRN, a licensed advanced practice registered nurse, is a Corizon employee who at all material times was working in Hutchinson Correctional Facility. At all material times, Defendant Heather Ungeheur, APRN was acting under color of state law. Based upon information and belief, Defendant Heather Ungeheur, APRN is a citizen and resident of the State of Kansas.

13.    Based upon information and belief, Defendant Nancy Cisky, APRN, a licensed advanced practice registered nurse, is a Corizon employee who at all material times was working in Hutchinson Correctional Facility. At all material times, Defendant Nancy Cisky, APRN was acting under color of state law. Based upon information and belief, Defendant Nancy Cisky, APRN is a citizen and resident of the State of Kansas.

14.    Based upon information and belief, Defendant Lisbeth Lieber, APRN, a licensed advanced practice registered nurse, is a Corizon employee who at all material times was working in Hutchinson Correctional Facility. At all material times, Defendant Lisbeth Lieber, APRN was acting under color of state law. Based upon information and belief, Defendant Lisbeth Lieber, APRN is a citizen and resident of the State of Kansas.

15.    Based upon information and belief, Defendant Ashley C. Barta, APRN, a licensed advanced practice registered nurse, is a Corizon employee who at all material times was working in Hutchinson Correctional Facility. At all material times, Defendant Ashley C. Barta, APRN was acting under color of state law. Based upon information and belief, Defendant Ashley C. Barta, APRN is a citizen and resident of the State of Kansas.

16.    Based upon information and belief, Defendant Rhonda Durant, APRN, a licensed advanced practice registered nurse, is a Corizon employee who at all material times was working in Hutchinson Correctional Facility. At all material times, Defendant Rhonda Durant, APRN was

7

acting under color of state law. Based upon information and belief, Defendant Rhonda Durant, APRN is a citizen and resident of the State of Kansas.

17.    Based upon information and belief, Defendant Debra Lundry, RN, a licensed registered nurse, is a Corizon employee who at all material times was working in Hutchinson Correctional Facility. At all material times, Defendant Debra Lundry, RN was acting under color of state law. Based upon information and belief, Defendant Debra Lundry, RN is a citizen and resident of the State of Kansas.

18.    Based upon information and belief, Defendant Jennifer Helus, RN, a licensed registered nurse, is a Corizon employee who at all material times was working in Hutchinson Correctional Facility. At all material times, Defendant Jennifer Helus, RN was acting under color of state law. Based upon information and belief, Defendant Jennifer Helus, RN is a citizen and resident of the State of Kansas.

19.    Based upon information and belief, Defendant Sarah Mendoza, RN, a licensed registered nurse, is a Corizon employee who at all material times was working in Hutchinson Correctional Facility. At all material times, Defendant Sarah Mendoza, RN was acting under color of state law. Based upon information and belief, Defendant Sarah Mendoza, RN is a citizen and resident of the State of Kansas.

20.    Based upon information and belief, Defendant Barbara Dickerson, RN, a licensed registered nurse, is a Corizon employee who at all material times was working in Hutchinson Correctional Facility. At all material times, Defendant Barbara Dickerson, RN was acting under color of state law. Based upon information and belief, Defendant Barbara Dickerson, RN is a citizen and resident of the State of Kansas.

8

21.    Based upon information and belief, Defendant Karen Dennis, RN, a licensed registered nurse, is a Corizon employee who at all material times was working in Hutchinson Correctional Facility. At all material times, Defendant Karen Dennis, RN was acting under color of state law. Based upon information and belief, Defendant Karen Dennis, RN is a citizen and resident of the State of Kansas.

22.    Based upon information and belief, Defendant Kelly French, RN, a licensed registered nurse, is a Corizon employee who at all material times was working in Hutchinson Correctional Facility. At all material times, Defendant Kelly French, RN was acting under color of state law. Based upon information and belief, Defendant Kelly French, RN is a citizen and resident of the State of Kansas.

23.    Based upon information and belief, Defendant Jennifer Vest, RN, a licensed registered nurse, is a Corizon employee who at all material times was working in Hutchinson Correctional Facility. At all material times, Defendant Jennifer Vest, RN was acting under color of state law. Based upon information and belief, Defendant Jennifer Vest, RN is a citizen and resident of the State of Kansas.

## JURISDICTION & VENUE

24.    This action arises under the constitution and laws of the United States and jurisdiction is based on 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a). This Court has pendent jurisdiction of the state law negligence claims pursuant to 28 U.S.C. § 1367, and diversity jurisdiction pursuant to 28 U.S.C. § 1332(c)(2).

## FACTUAL ALLEGATIONS

9

25.   On March 12, 2010, Decedent Marques Davis is sentenced to serve time in the Kansas penal system.

26.   In June of 2016, Decedent is transferred from Eldorado Correctional Facility to Hutchinson Correctional Facility.

27.   Prior to his arrival at Hutchinson Correctional Facility, Decedent is by all accounts a healthy 27 year-old man.

28.   In July and August 2016, Decedent begins experiencing numbness in his feet, weakness of his right leg, and severe mid-back pain. Decedent reports his complaints to numerous Corizon healthcare providers at the Hutchinson Correctional Facility infirmary.

29.   Corizon physician, Michael Dobbs, M.D. documents Decedent's symptoms to be caused by Decedent's blood pressure medication. Decedent's blood pressure medication is stopped.

30.   However, in September 2016, Decedent's symptoms worsen. Decedent begins falling because of worsening numbness in his lower extremities. He experiences extreme difficulty walking and is documented by Corizon healthcare providers to be using a cane for mobility.

31.   During September 2016, Decedent makes approximately twelve (12) visits to the infirmary concerning numbness in his feet, weakness of his right leg, severe mid-back pain, and an increasing inability to walk.

32.   Upon information and belief, during September 2016, Decedent's mother, Plaintiff Shermaine Walker makes numerous telephone calls to Corizon healthcare providers requesting her son receive medical attention.

33.    In response to Decedent's symptoms, Corizon healthcare providers prescribe Tylenol and order a lumbar x-ray, but document they believe Decedent to be faking his symptoms.

34.    During October 2016, Decedent continues experiencing numbness in his feet, weakness of his right leg, severe mid-back pain, and an increasing inability to walk. During this time, Decedent makes eight (8) visits to the infirmary complaining of the above symptoms. Upon information and belief, Plaintiff Shermaine Walker makes numerous telephone calls to Corizon healthcare providers requesting her son receive medical care.

35.    On October 25, 2016, Corizon physician, Karl Saffo, M.D. documents Decedent's limping is now "very visible" and that Decedent is demonstrating neurological deficits. Dr. Saffo documents he will seek approval for EMG studies.

36.    On October 25, 2016, Yvette Hefner, R.N. documents a referral is needed for an MRI.

37.    On October 31, 2016, Karl Saffo, M.D. examines Decedent and notes muscle weakness in Decedent's right leg and numbness in both of his feet. Additionally, Dr. Saffo, documents Decedent's muscle strength and range of motion are impaired.

38.    Upon information and belief, neither an MRI nor EMG studies take place during October 2016.

39.    During November 2016, Decedent continues experiencing numbness in his feet, weakness of his right leg, severe mid-back pain, and an increasing inability to walk. During this time, Decedent makes five (5) visits to the infirmary complaining of the above symptoms.

40.    Upon information and belief, at some point in November, Decedent receives EMG studies.

11

41.   On November 21, 2016, Decedent is examined by neurology, who defers any evaluation and treatment of Decedent's "subjective weakness" to Corizon healthcare providers. During such consultation, Decedent's EMG results are documented as normal.

42.   During December 2016, Decedent continues experiencing numbness in his feet, weakness of his right leg, severe mid-back pain, and an increasing inability to walk. During this time, Decedent makes eight (8) visits to the infirmary complaining of the above symptoms. Upon information and belief, Plaintiff Shermaine Walker makes numerous telephone calls to Corizon healthcare providers requesting her son receive medical care.

43.   On December 15, 2016, in addition to his previous chronic complaints, Decedent begins complaining of pain, numbness, and itching in his arms that radiates down his arms from his elbows to his fingertips.

44.   During December 2016, Corizon healthcare providers document that Decedent's symptoms point towards viral inflammation. Corizon healthcare providers also document Decedent has a family history of Lupus.

45.   On December 27, 2016, during a visit to the infirmary Decedent reports "it feels like something is eating my brain." Corizon healthcare providers document Decedent's walking is getting more severe, he is getting dizzy, and having hot sweats. At that time, Decedent requests a wheel chair, but upon information and belief is denied such wheel chair. Decedent also requests an MRI.

46.   On January 2, 2017, Corizon physician, Paul Corbier, M.D. approves an MRI of Decedent's lumbar spine.

47.   During January 2017, Decedent continues experiencing numbness in his feet, weakness of his right leg, severe mid-back pain, an increasing inability to walk, numbness in his

12

hands, and dizziness. Upon information and belief, Plaintiff Shermaine Walker makes numerous telephone calls to Corizon healthcare providers requesting her son receive medical care.

48.   Decedent makes four (4) visits to the infirmary before January 19, 2017. During these visits to the infirmary he complains of the same symptoms he has been suffering from for the last four to five months. Corizon healthcare providers give Decedent Tylenol in response to his complaints.

49.   On January 10, 2017, a MRI of Decedent's lumbar spine is conducted. It is documented as being normal.

50.   On January 19, 2017, Decedent passes out when attempting to use the phone. He is then placed in the infirmary for observation concerning fainting, weakness, tingling and numbness in the extremities, and difficulty walking. Corizon healthcare providers place him on prednisone for ten days.

51.   Decedent remains in the infirmary under observation until February 14, 2017.

52.   During Decedent's time in the infirmary, he continues to suffer from numbness in his feet, weakness of his right leg, severe mid-back pain, an increasing inability to walk, numbness in his hands, and dizziness.

53.   During his time in the infirmary, Decedent continues to ask Corizon healthcare providers what is wrong with his body. There are no responses provided in Decedent's medical records.

54.   On February 5, 2017, Corizon healthcare providers document they are going to pursue a neurology consult for Decedent. Decedent does not receive this neurology consult.

55.   During Decedent's time in the infirmary, numerous Corizon healthcare providers document Decedent is faking his illness.

13

56.    During Decedent's time in the infirmary during January and February 2017, Corizon healthcare providers only provide Tylenol and constipation medication to Decedent.

57.    On February 14, 2017, Decedent is discharged from the infirmary.

58.    On February 21, 2017, Decedent returns to the infirmary for a follow-up visit. He is now complaining of numbness in his feet, weakness of his right leg, severe mid-back pain, an increasing inability to walk, numbness in his hands, dizziness, and persistent headaches. During this visit, Corizon healthcare providers document a neurology consult was NOT APPROVED and that an EKG done during the visit is abnormal. No action by Corizon healthcare providers is documented.

59.    On February 23, 2017, Decedent is brought to the clinic by a corrections officer. Decedent is now suffering from vision problems in addition to his previous ailments. During this visit, Decedent is documented to be dizzy and unsteady on his feet. Corizon healthcare providers also document Decedent is having trouble tracking with his eyes, sluggish pupillary reaction and erratic eye movement.

60.    On February 27, 2017, Decedent reports to the infirmary again complaining primarily about dizziness. He is placed in the infirmary for 23 hours. He is discharged from the infirmary on February 28, 2017.

61.    During March 2017, Decedent continues experiencing numbness in his feet, weakness of his right leg, severe mid-back pain, an increasing inability to walk, numbness in his hands, dizziness, vision problems, and migraines. Upon information and belief, Plaintiff Shermaine Walker makes numerous telephone calls to Corizon staff requesting her son receive medical care.

14

62. During March 2017, Decedent's condition begins to decline even more. Up until March 25, 2017, Decedent makes seven (7) visits to the infirmary. He continues to suffer from numbness in his feet, weakness of his right leg, severe mid-back pain, an increasing inability to walk, numbness in his hands, dizziness, vision problems, and migraines. However, numerous Corizon healthcare providers continue to document Decedent is faking his symptoms.

63. On March 25, 2017, Decedent arrives at the infirmary for an emergency visit. Corizon healthcare provider, Nina Morales, LPN documents "[Decedent] also reports dizziness, balance disturbances, and decreased vision to right eye. Fingers to hands are stiff and bent in abnormal directions. Arms shake uncontrollably." He is released from the infirmary.

64. At approximately 6:41 p.m. on March 25, 2017, Decedent is found lying on the cell house floor outside of his cell. He is then seen by Corizon healthcare providers. Corizon healthcare providers document Decedent is complaining of dizziness and note visible trembling in both of his arms. Decedent is admitted to infirmary.

65. On March 26, 2017, Decedent's condition worsens. Decedent still suffering from numbness in his feet, weakness of his right leg, severe mid-back pain, an increasing inability to walk, numbness in his hands, dizziness, vision problems, and migraines begins acting erratically and uncharacteristically. He now needs assistance using the toilet and begins urinating in cups and his water pitcher. He is then moved to an isolation cell within the infirmary.

66. On March 26, 2017, Corizon healthcare providers document Decedent's brain MRI as normal and that a neurology consult has been ordered. However, Decedent never had a brain MRI.

67. During the remainder of March and the beginning of April, Decedent's condition continues to worsen. Decedent continues to suffer from the same symptoms he has been for the

15

last seven months. Upon information and belief, Plaintiff Shermaine Walker makes numerous calls to Corizon healthcare providers begging them to treat Decedent.

68.     Between March 31, 2017 and April 12, 2017, Decedent shows symptoms of incontinence. Decedent frequently urinates and defecates on himself, and makes no attempt to clean up. He is becoming increasingly confused as he begins slurring his speech, talking incoherently, and drinking his own urine. Decedent has also lost a significant amount of weight and decreases his consumption of food.

69.     At the same time, Corizon healthcare providers continue to dismiss Decedent's complaints as fake, but order a neurology consult "ASAP." A neurology consult is documented to take be scheduled on June 22, 2017. Decedent will never receive this neurology consult.

70.     Decedent undergoes an MRI of his brain on April 11, 2017.

71.     The April 11, 2017 MRI results indicate a wide-spread infection throughout Decedent's brain and evidence of tonsillar herniation.

72.     Decedent is not immediately hospitalized after the results of his MRI. Instead, he is moved back to his isolation cell by Corizon healthcare providers.

73.     At approximately 12:25 p.m. on April 12, 2017, Decedent goes into cardio-pulmonary arrest. At approximately 12:42 p.m. Corizon healthcare providers begin administering CPR and notify EMS.

74.     Decedent is taken to Hutchinson Regional Medical Center where he is declared brain dead. At Hutchinson Regional Medical Center, a brain CT shows dramatic swelling of the brain sufficient to force the upper part of the brain down into the lower part of the brain, a condition called tonsillar herniation. There is no hope of recovery for Decedent.

75.    On April 13, 2017, with no hope of recovery and total brain death, life support is terminated and Decedent dies.

76.    An autopsy reveals a diagnosis of far advanced Granulomatous Meningoencephalitis, involving lungs, liver, kidney, and brain.

77.    Over the course of nearly eight months, Corizon healthcare providers allowed Decedents disease to dramatically worsen resulting in Decedent suffering extreme emotional and physical distress and eventually death.

78.    Over the course of nearly eight months, Decedent Marques Davis and his mother, Plaintiff Shermaine Walker filed numerous grievances and sick calls which only resulted in Corizon healthcare staff continuing to do nothing to help Decedent.

**FIRST CLAIM FOR RELIEF**
**Civil Rights Claim – 8th Amendment – 42 U.S.C. § 1983**
**Wrongful Death**
*Plaintiffs v. Individual Defendants*

COMES NOW Plaintiffs, Shermaine Walker and I.D.F., a minor, by and through her Next Friend and mother Erika Flowers, and for their First Claim for Relief of this Complaint against Defendant individuals states as follows:

79.    Plaintiffs hereby incorporate each of the preceding paragraphs as though fully set forth herein.

80.    Defendants were deliberately indifferent to Decedent Marques Davis' rights under the Eighth Amendment of the U.S. Constitution in that said defendants:

    a.    Failed to provide him with prompt medical attention to his serious medical needs;

    b.    Failed to promptly transfer him from Hutchinson Correctional Facility to a hospital for diagnosis and treatment;

17

    c.   Seriously aggravated his medical condition by ignoring his medical condition for approximately eight months;

    d.   Failed to treat his serious medical need;

    e.   Seriously aggravated his medical condition by failing to render meaningful medical care; and

    f.   Failed to respond appropriately to his medical emergency.

81.    After Decedent Marques Davis' abnormal April 11, 2017 MRI, Defendants Paul Corbier, M.D., Sohaib Mohiuddin, M.D., and Karl Saffo, M.D. were deliberately indifferent to his rights under the Eighth Amendment of the U.S. Constitution in that said defendants failed and refused to order immediate hospitalization in light of a life threatening, serious medical need.

82.    As a direct result of the actions and inactions of Defendants as set forth in paragraphs 80 and 81 Decedent Marques Davis was not provided meaningful, necessary, and/or timely medical care. Instead, as a direct result of the actions and inactions of Defendants decedent Marques Davis was forced to suffer for months from a severe, debilitating neurological disorder that resulted in his death. Additionally, as a direct result of the actions and inactions of Defendants Mr. Davis endured and suffered severe physical and emotional distress over a period of eight months. Plaintiffs Shermaine Walker and I.D.F. have been denied his love, society, and companionship.

83.    The actions of Defendants were recklessly indifference to Decedent Marques Davis and Plaintiffs' civil rights, and callously disregarded Decedent Marques Davis' physical safety, and punitive damages should be awarded against Defendants.

84.    Plaintiffs are entitled to their necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

18

WHEREFORE, Plaintiffs, Shermaine Walker and I.D.F., a minor, by and through her Next Friend and mother Erika Flowers, pray for judgment under their First Claim for Relief against Defendant individuals for a sum in excess of $75,000.00, and for any and all other and further damages as may be appropriate or to which he may be entitled at law.

## SECOND CLAIM FOR RELIEF
### Civil Rights Claim – 8th Amendment – 42 U.S.C. § 1983
### *Monell* Claims – Wrongful Death
*Plaintiffs v. Defendant Corizon*

COMES NOW Plaintiffs, Shermaine Walker and I.D.F., a minor, by and through her Next Friend and mother Erika Flowers, and for their Second Claim for Relief of this Complaint against Defendant Corizon states as follows:

85.    Plaintiffs hereby incorporate each of the preceding paragraphs as though fully set forth herein.

86.    The moving forces that resulted in the deprivation of Decedent Marques Davis' and Plaintiffs' Eighth Amendment rights were the following policies, customs or practices of Defendant Corizon:

 a.  A policy, custom or practice of dismissing Hutchinson Correctional Facility inmate medical complaints as fabricated;

 b.  A policy custom or practice of providing insufficient medical coverage for inmates of Hutchinson Correctional Facility;

 c.  A policy, custom or practice of refusing to refer ill inmates to the hospital in order to save money;

 d.  A policy, custom or practice of hiring medical and nursing personnel indifferent to the medical needs of Hutchinson Correctional Facility inmates;

19

e.  A policy custom or practice of denying Hutchinson Correctional Facility inmates medically necessary transfers to the hospital;

f.  A policy, custom or practice of denying Hutchinson Correctional Facility inmates necessary medical care;

g.  A policy, custom or practice of hiring medical personnel indifferent to medical emergencies;

h.  A policy, custom or practice of failing to train non-physician medical personnel how to perform a basic neurological exam; and

i.  A policy, custom or practice of failing to meet widely accepted community standards of care with regard to medical services for ill and/or injured inmates of Hutchinson Correctional Facility.

87.  The policies of Defendant Corizon posed a substantial risk of causing harm to Hutchinson Correctional Facility inmates, and Corizon was aware of the risk.

88.  As a direct result of the policies, customs or practices of Defendant Corizon, Decedent Marques Davis was not provided meaningful, necessary, and/or timely medical care. Instead, as a direct result of Defendant Corizon's policies, customs or practices decedent Marques Davis was forced to suffer for months from a severe, debilitating neurological disorder that resulted in his death. As a direct result of the policies, customs or practices of Corizon, Mr. Davis endured and suffered severe physical and emotional distress over a period of eight months. Plaintiffs Shermaine Walker and I.D.F. have been denied his love, society, and companionship.

89.  The actions of Defendant Corizon were recklessly indifference to Decedent Marques Davis and Plaintiffs' civil rights, and callously disregarded Decedent Marques Davis' physical safety, and punitive damages should be awarded against Corizon.

20

90.   Plaintiffs are entitled to their necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

WHEREFORE, Plaintiffs, Shermaine Walker and I.D.F., a minor, by and through her Next Friend and mother Erika Flowers, pray for judgment under their Second Claim for Relief against Defendant Corizon for a sum in excess of $75,000.00, and for any and all other and further damages as may be appropriate or to which he may be entitled at law.

### THIRD CLAIM FOR RELIEF
**Civil Rights Claim – 8th Amendment - 42 U.S.C. § 1983**
**Supervisory Liability – Wrongful Death**
*Plaintiffs v. Defendants Corizon and Paul Corbier, M.D.*

COMES NOW Plaintiffs, Shermaine Walker and I.D.F., a minor, by and through her Next Friend and mother Erika Flowers, and for their Third Claim for Relief of this Complaint against Defendants Corizon, Paul Corbier, M.D., and John or Jane Doe, nursing director states as follows:

91.   Plaintiffs hereby incorporate each of the preceding paragraphs as though fully set forth herein.

92.   Defendants Corizon, Paul Corbier, M.D., and John or Jane Doe, in their supervisory capacity, were aware of the policies, customs or practices as alleged in paragraph 86, above, and were aware that said policies, customs or practices created a substantial risk of causing substantial harm to Hutchinson Correctional inmates by endangering their physical safety and their medical needs. Despite their knowledge, said supervisors allowed, approved of and ratified said policies, customs or practices.

93.   Defendants Corizon, Paul Corbier, M.D., and John or Jane Doe in their supervisory capacities, failed to adequately train Corizon employees:

21

a. To recognize medical emergencies;

b. To recognize medical ailments;

c. To perform basic neurological examines;

d. To recognize the need for medically necessary transfers to a hospital and/or outside medical facility; and

e. To transfer inmates to a hospital and/or outside medical facility when medically indicated.

94. Defendants Corizon, Paul Corbier, M.D., and John or Jane Doe were aware that the failure to train set forth in paragraph 93, above, created a substantial risk of causing harm to Hutchinson Correctional Facility inmates.

95. As a direct result of the actions and inactions of Defendants Corizon, Paul Corbier, M.D., and John or Jane Doe Decedent Marques Davis was not provided meaningful, necessary, and/or timely medical care. Instead, as a direct result of the actions and inactions of Defendants Corizon, Paul Corbier, M.D., John or Jane Doe decedent Marques Davis was forced to suffer for months from a severe, debilitating neurological disorder that resulted in his death. Additionally, as a direct result of the actions and inactions of Defendants Corizon, Paul Corbier, M.D., and John or Jane Doe, Mr. Davis endured and suffered severe physical and emotional distress over a period of eight months. Plaintiffs Shermaine Walker and I.D.F. have been denied his love, society, and companionship.

96. The actions of Defendants Corizon, Paul Corbier, M.D., and John or Jane Doe were recklessly indifference to Decedent Marques Davis and Plaintiffs' civil rights, and callously disregarded Decedent Marques Davis' physical safety, and punitive damages should be awarded against Corizon, Paul Corbier, M.D., and John or Jane Doe.

97.   Plaintiffs are entitled to their necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

WHEREFORE, Plaintiffs, Shermaine Walker and I.D.F., a minor, by and through her Next Friend and mother Erika Flowers, pray for judgment under their Third Claim for Relief against Defendants Corizon and Paul Corbier, M.D. for a sum in excess of $75,000.00, and for any and all other and further damages as may be appropriate or to which he may be entitled at law.

## FOURTH CLAIM FOR RELIEF
### (Negligence – Wrongful Death)
*Plaintiffs Shermaine Walker & I.D.F. as heirs at law of Marques Davis, deceased*
*v.*
*All Defendants*

COMES NOW Plaintiffs, Shermaine Walker and I.D.F., a minor, by and through her Next Friend and mother Erika Flowers, and for their Fourth Claim for Relief of this Complaint against Defendants, states as follows:

98.   Plaintiffs hereby incorporate each of the preceding paragraphs as though fully set forth herein.

99.   Defendants owed to Decedent Marques Davis a duty to use that degree of skill, care, learning, and judgment ordinarily used under the same or similar circumstances by members of their profession.

100.   Defendants failed to use that degree of skill, care, learning, and judgment ordinarily used under the same or similar circumstances by members of their profession in that Defendants, acting individually and/or through their employees, agents and servants, were negligent in the following particulars to wit:

   a.   Failed to provide him with prompt medical attention to his serious medical needs;

23

b. Failed to promptly transfer him from Hutchinson Correctional Facility to a hospital for diagnosis and treatment;

c. Seriously aggravated his medical condition by ignoring his medical condition for approximately eight months;

d. Failed to appropriately diagnose his disease;

e. Failed to appropriately, timely, or otherwise treat his disease;

f. Failed to treat his disease as real;

g. Failed to treat his serious medical need;

h. Seriously aggravated his medical condition by failing to render meaningful medical care; and

i. Failed to respond appropriately to his medical emergency.

101.    After Decedent Marques Davis' abnormal April 11, 2017 MRI, Defendants Paul Corbier, M.D., Sohaib Mohiuddin, M.D., and Karl Saffo, M.D. were negligent in that said defendants failed and refused to order immediate hospitalization in light of a life threatening, serious medical need.

102. As a direct and proximate result of the negligence of Defendants, Decedent Marques Davis was caused injury that resulted in his death.

103. As a direct and proximate result of the negligence of Defendants, Decedent Marques Davis suffered and endured prior to his death significant physical and mental pain and suffering.

104. As a direct and proximate result of the negligence of Defendants, Plaintiffs Shermaine Walker and I.D.F., as heirs at law of Marques Davis, have suffered mental anguish, suffering, and bereavement; loss of society, companionship, comfort, and protection; loss of

24

marital care, attention, advice and counsel; loss of parental care, training, guidance and education; loss of financial support which Decedent Marques Davis would have contributed for the remainder of his life; and reasonable funeral expenses.

WHEREFORE, Plaintiffs, Shermaine Walker and I.D.F., a minor, by and through her Next Friend and mother Erika Flowers, pray for judgment under their Fourth Claim for Relief against Defendants for a sum in excess of $75,000.00, and for any and all other and further damages as may be appropriate or to which he may be entitled at law.

## FIFTH CLAIM FOR RELIEF

### Civil Rights Claim – 8th Amendment – 42 U.S.C. § 1983
### Survival Claim
*Estate of Marques Davis v. Defendant Individuals*

COME NOW the Estate of Marques Davis, by and through Plaintiff Shermaine Walker in her capacity as Special Administrator of the Estate of Marques Davis, and for the Fifth Claim for Relief of this Complaint against Defendant individuals, states as follows:

105.  Marques Davis' Estate hereby incorporates each of the preceding paragraphs as though fully set forth herein.

106. Defendants were deliberately indifferent to Decedent Marques Davis' rights under the Eighth Amendment of the U.S. Constitution in that said defendants:

g.  Failed to provide him with prompt medical attention for his serious medical needs;

h.  Failed to promptly transfer him from Hutchinson Correctional Facility to a hospital for diagnosis and treatment;

i.  Seriously aggravated his medical condition by ignoring his medical condition for approximately eight months;

j.  Failed to treat his serious medical need;

k.  Seriously aggravated his medical condition by failing to render meaningful medical care; and

l.  Failed to respond appropriately to his medical emergency.

107.    After Decedent Marques Davis' abnormal April 11, 2017 MRI, Defendants Paul Corbier, M.D., Sohaib Mohiuddin, M.D., and Karl Saffo, M.D. were deliberately indifferent to his rights under the Eighth Amendment of the U.S. Constitution in that said defendants failed and refused to order immediate hospitalization in light of a life threatening, serious medical need.

108.   As a direct result of the actions and inactions of Defendants as set forth in paragraphs 80 and 81 Decedent Marques Davis was not provided meaningful, necessary, and/or timely medical care. Instead, as a direct result of the actions and inactions of Defendants decedent Marques Davis was forced to suffer for months from a severe, debilitating neurological disorder that resulted in his death. Additionally, as a direct result of the actions and inaction of Defendants Mr. Davis endured and suffered severe physical and emotional distress over a period of eight months.

109.   The actions of Defendants were recklessly indifference to Decedent Marques Davis civil rights, and callously disregarded Decedent Marques Davis' physical safety, and punitive damages should be awarded against Defendant individuals.

110.   Marques Davis' Estate is entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

WHEREFORE, the Estate of Marques Davis, by and through Plaintiff Shermaine Walker in her capacity as Special Administrator of the Estate of Marques Davis, prays for judgment under the Fifth Claim for Relief against Defendant individuals for a sum in excess of $75,000.00,

26

and for any and all other and further damages as may be appropriate or to which he may be entitled at law.

**SIXTH CLAIM FOR RELIEF**
**Civil Rights Claim – 8th Amendment – 42 U.S.C. § 1983**
***Monell* Claims – Survival Claim**
*Estate of Marques Davis v. Defendant Corizon*

COME NOW the Estate of Marques Davis, by and through Plaintiff Shermaine Walker in her capacity as Special Administrator of the Estate of Marques Davis, and for the Sixth Claim for Relief of this Complaint against Defendant Corizon, states as follows:

111.  Marques Davis' Estate hereby incorporates each of the preceding paragraphs as though fully set forth herein.

112.  The moving forces that resulted in the deprivation of Decedent Marques Davis' Eighth Amendment rights were the following policies, customs or practices of Defendant Corizon:

j.  A policy, custom or practice of dismissing Hutchinson Correctional Facility inmate medical complaints as fabricated;

k.  A policy custom or practice of providing insufficient medical coverage for inmates of Hutchinson Correctional Facility;

l.  A policy, custom or practice of refusing to refer ill inmates to the hospital in order to save money;

m. A policy, custom or practice of hiring medical and nursing personnel indifferent to the medical needs of Hutchinson Correctional Facility inmates;

n.  A policy custom or practice of denying Hutchinson Correctional Facility inmates medically necessary transfers to the hospital;

27

    o.   A policy, custom or practice of denying Hutchinson Correctional Facility inmates necessary medical care;

    p.   A policy, custom or practice of hiring medical personnel indifferent to medical emergencies;

    q.   A policy, custom or practice of failing to train non-physician medical personnel how to perform a basic neurological exam; and

    r.   A policy, custom or practice of failing to meet widely accepted community standards of care with regard to medical services for ill and/or injured inmates of Hutchinson Correctional Facility.

113. The policies of Defendant Corizon posed a substantial risk of causing harm to Hutchinson Correctional Facility inmates, and Corizon was aware of the risk.

114. As a direct result of the policies, customs or practices of Defendant Corizon, Decedent Marques Davis was not provided meaningful, necessary, and/or timely medical care. Instead, as a direct result of Defendant Corizon's policies, customs or practices decedent Marques Davis was forced to suffer for months from a severe, debilitating neurological disorder that resulted in his death. As a direct result of the policies, customs or practices of Corizon, Mr. Davis endured and suffered severe physical and emotional distress over a period of eight months.

115. The actions of Defendant Corizon were recklessly indifference to Decedent Marques Davis, and callously disregarded Decedent Marques Davis' physical safety, and punitive damages should be awarded against Corizon.

116. Marques Davis' Estate is entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

28

WHEREFORE, the Estate of Marques Davis, by and through Plaintiff Shermaine Walker in her capacity as Special Administrator of the Estate of Marques Davis, prays for judgment under the Sixth Claim for Relief against Defendant Corizon for a sum in excess of $75,000.00, and for any and all other and further damages as may be appropriate or to which he may be entitled at law.

**SEVENTH CLAIM FOR RELIEF**
**Civil Rights Claim – 8th Amendment - 42 U.S.C. § 1983**
**Supervisory Liability – Survival Claim**
*Estate of Marques Davis v. Defendants Corizon and Paul Corbier. M.D.*

COME NOW the Estate of Marques Davis, by and through Plaintiff Shermaine Walker in her capacity as Special Administrator of the Estate of Marques Davis, and for the Seventh Claim for Relief of this Complaint against Defendants Corizon, Paul Corbier, M.D., and John or Jane Doe, nursing director states as follows:

117.  Marques Davis' Estate hereby incorporates each of the preceding paragraphs as though fully set forth herein.

118.  Defendants Corizon, Paul Corbier, M.D., and John or Jane Doe in their supervisory capacity, were aware of the policies, customs or practices as alleged in paragraph ___, above, and were aware that said policies, customs or practices created a substantial risk of causing substantial harm to Hutchinson Correctional inmates by endangering their physical safety and their medical needs. Despite their knowledge, said supervisors allowed, approved of and ratified said policies, customs or practices.

119.  Defendants Corizon, Paul Corbier, M.D., and John or Jane Doe, in their supervisory capacities, failed to adequately train Corizon employees:

  f.  To recognize medical emergencies;

29

g. To recognize medical ailments;

h. To perform basic neurological examines;

i. To recognize the need for medically necessary transfers to a hospital and/or
outside medical facility; and

j. To transfer inmates to a hospital and/or outside medical facility when medically
indicated.

120. Defendants Corizon, Paul Corbier, M.D., and John or Jane Doe were aware that the
failure to train set forth in paragraph 119, above, created a substantial risk of causing harm to
Hutchinson Correctional Facility inmates.

121. As a direct result of the actions and inactions of Defendants Corizon, Paul Corbier,
M.D., and John or Jane Doe, Decedent Marques Davis was not provided meaningful, necessary,
and/or timely medical care. Instead, as a direct result of the actions and inactions of Defendants
Corizon, Paul Corbier, M.D., and John or Jane Doe Decedent Marques Davis was forced to
suffer for months from a severe, debilitating neurological disorder that resulted in his death.
Additionally, as a direct result of the actions and inaction of Defendants Corizon, Paul Corbier,
M.D., and John or Jane Doe, Mr. Davis endured and suffered severe physical and emotional
distress over a period of eight months.

122. The actions of Defendants Corizon, Paul Corbier, M.D., and John or Jane Doe were
recklessly indifference to Decedent Marques Davis civil rights, and callously disregarded
Decedent Marques Davis' physical safety, and punitive damages should be awarded against
Defendants Corizon, Paul Corbier, M.D., and John or Jane Doe

123. Marques Davis' Estate is entitled to their necessary and reasonable attorney fees
and costs incurred in the prosecution of this action.

30

WHEREFORE, the Estate of Marques Davis, by and through Plaintiff Shermaine Walker in her capacity as Special Administrator of the Estate of Marques Davis, prays for judgment under the Seventh Claim for Relief against Defendants Corizon and Paul Corbier, M.D. for a sum in excess of $75,000.00, and for any and all other and further damages as may be appropriate or to which he may be entitled at law.

**EIGHTH CLAIM FOR RELIEF**
**(Negligence – Survival Claim)**
*Estate of Marques Davis v. All Defendants*

COME NOW the Estate of Marques Davis, by and through Plaintiff Shermaine Walker in her capacity as Special Administrator of the Estate of Marques Davis, and for the Eighth Claim for Relief of this Complaint against Defendant individuals, states as follows:

124.  Estate of Marques Davis hereby incorporates each of the preceding paragraphs as though fully set forth herein.

125.  As a direct and proximate result of negligence of Defendants referenced above, Decedent Marques Davis was injured and damaged in the following particulars:

    a.  Decedent Marques Davis suffered and endured prior to his death significant physical and mental pain and suffering;

    b.  Decedent Marques Davis was deprived of a material and statistically significant chance for survival.

WHEREFORE, the Estate of Marques Davis, by and through Plaintiff Shermaine Walker in her capacity as Special Administrator of the Estate of Marques Davis, prays for judgment under the Eighth Claim for Relief against Defendants for a sum in excess of $75,000.00, and for any and all other and further damages as may be appropriate or to which he may be entitled at law.

31

Dated this 16th day of October, 2017.

                              DEMPSEY & KINGSLAND, P.C.

                               /s/ Leland F. Dempsey
                              Leland F. Dempsey     KS #22410
                              Dempsey & Kingsland, P.C.
                              1100 Main Street, Suite 1860
                              Kansas City, Missouri 64105
                              Telephone: (816) 421-6868
                              Facsimile:  (816) 421-2610
                              leland@dandklaw.com
                              **Attorney for Plaintiffs**

## DEMAND FOR TRIAL

Plaintiff demands a trial by jury on all issues raised herein.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates Kansas City, Kansas, as the place of trial.

Dated this 16th day of October, 2017.

                                DEMPSEY & KINGSLAND, P.C.

                               /s/ Leland F. Dempsey
                              Leland F. Dempsey     KS #22410
                              Dempsey & Kingsland, P.C.
                              1100 Main Street, Suite 1860
                              Kansas City, Missouri 64105
                              Telephone: (816) 421-6868
                              Facsimile:  (816) 421-2610
                              leland@dandklaw.com
                              **Attorney for Plaintiffs**