IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| SHERMAINE WALKER, Individually,<br>and as Administrator of the Estate<br>of Marques Davis, deceased.<br>1615 Harding<br>Wichita, KS 67208 | ) ) ) ) ) ) | |
| and | ) ) | |
| I. D. F., a minor, by and through her<br>Next Friend and natural mother, Erika Flowers.<br>7450 E. 32nd St. North, Apt. 703<br>Wichita, Kansas 67226 | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:17-cv-02601 |
| v. | ) ) ) | |
| CORIZON HEALTH INC. f/k/a<br>CORRECTIONAL MEDICAL SERVICES<br>    Serve Registered Agent:<br>    The Corporation Company, Inc.<br>    112 SW 7th Street, Suite 3C<br>    Topeka, KS 66603 | ) ) ) ) ) ) ) | |
| and | ) ) | |
| PAUL CORBIER, M.D.<br>Regional Medical Director<br>Corizon Health, Inc.<br>    Serve at Place of Employment:<br>    Hutchinson Correctional Facility<br>    Medical Unit<br>    500 Reformatory St.<br>    Hutchinson, KS 67501 | ) ) ) ) ) ) ) ) | |
| and | ) ) | |
| JOHN or JANE DOE #1<br>Hutchinson Correctional Facility ("HCF")<br>Medical Director<br>Corizon Health, Inc.<br>    Serve at Place of Employment:<br>    Hutchinson Correctional Facility | ) ) ) ) ) ) | |

1

Medical Unit                                           )
500 Reformatory St.                                    )
Hutchinson, KS 67501                                   )
                                                       )
    and                                                )
                                                       )
JOHN or JANE DOE #2                                    )
HCF Health Services Administrator                      )
Corizon Health, Inc.                                   )
        Serve at Place of Employment:                  )
        Hutchinson Correctional Facility               )
        Medical Unit                                   )
        500 Reformatory St.                            )
        Hutchinson, KS 67501                           )
                                                       )
    and                                                )
                                                       )
JOHN or JANE DOE #3                                    )
HCF Director of Nursing                                )
Corizon Health, Inc.                                   )
        Serve at Place of Employment:                  )
        Hutchinson Correctional Facility               )
        Medical Unit                                   )
        500 Reformatory St.                            )
        Hutchinson, KS 67501                           )
                                                       )
    and                                                )
                                                       )
SOHAIB MOHIUDDIN, M.D.                                 )
Corizon Health, Inc.                                   )
        Serve at Place of Employment:                  )
        Hutchinson Correctional Facility               )
        Medical Unit                                   )
        500 Reformatory St.                            )
        Hutchinson, KS 67501                           )
                                                       )
    and                                                )
                                                       )
KARL SAFFO, M.D.                                       )
Corizon Health, Inc.                                   )
        Serve at Place of Employment:                  )
        Hutchinson Correctional Facility               )
        Medical Unit                                   )
        500 Reformatory St.                            )
        Hutchinson, KS 67501                           )
                                                       )

2

```
                  and                                    )
                                                         )
HEATHER UNGEHEUR, APRN                                   )
Corizon Health, Inc.                                     )
        Serve at Place of Employment:                    )
        Hutchinson Correctional Facility                 )
        Medical Unit                                     )
        500 Reformatory St.                              )
        Hutchinson, KS 67501                             )
                                                         )
                  and                                    )
                                                         )
NANCY CISKEY, Nurse                                      )
Corizon Health, Inc.                                     )
        Serve at Place of Employment:                    )
        Hutchinson Correctional Facility                 )
        Medical Unit                                     )
        500 Reformatory St.                              )
        Hutchinson, KS 67501                             )
                                                         )
RHONDA DURANT, Nurse                                     )
Corizon Health, Inc.                                     )
        Serve at Place of Employment:                    )
        Hutchinson Correctional Facility                 )
        Medical Unit                                     )
        500 Reformatory St.                              )
        Hutchinson, KS 67501                             )
                                                         )
                  and                                    )
                                                         )
DEBRA LUNDRY, Nurse                                      )
Corizon Health, Inc.                                     )
        Serve at Place of Employment:                    )
        Hutchinson Correctional Facility                 )
        Medical Unit                                     )
        500 Reformatory St.                              )
        Hutchinson, KS 67501                             )
                                                         )
                  and                                    )
                                                         )
JENNIFER HELUS, Nurse                                    )
Corizon Health, Inc.                                     )
        Serve at Place of Employment:                    )
        Hutchinson Correctional Facility                 )
        Medical Unit                                     )
        500 Reformatory St.                              )
```

3

Hutchinson, KS 67501     )
           )
  and         )
           )
SARAH MENDOZA, Nurse   )
Corizon Health, Inc.      )
   Serve at Place of Employment: )
   Hutchinson Correctional Facility )
   Medical Unit     )
   500 Reformatory St.   )
   Hutchinson, KS 67501   )
           )
  and         )
           )
BARBARA DICKERSON, Nurse  )
Corizon Health, Inc.      )
   Serve at Place of Employment: )
   Hutchinson Correctional Facility )
   Medical Unit     )
   500 Reformatory St.   )
   Hutchinson, KS 67501   )
           )
  and         )
           )
KAREN DENNIS, Nurse    )
Corizon Health, Inc.      )
   Serve at Place of Employment: )
   Hutchinson Correctional Facility )
   Medical Unit     )
   500 Reformatory St.   )
   Hutchinson, KS 67501   )
           )
  and         )
           )
KELLY FRENCH, Nurse    )
Corizon Health, Inc.      )
   Serve at Place of Employment: )
   Hutchinson Correctional Facility )
   Medical Unit     )
   500 Reformatory St.   )
   Hutchinson, KS 67501   )
           )
  and         )
           )
JENNIFER VEST, Nurse    )
Corizon Health, Inc.      )

4

Serve at Place of Employment:          )
Hutchinson Correctional Facility       )
Medical Unit                           )
500 Reformatory St.                    )
Hutchinson, KS 67501                   )
                                       )
          Defendants.                  )

## FIRST AMENDED COMPLAINT

COME NOW Plaintiffs, Shermaine Walker and I.D.F., a minor, by and through her Next

Friend and mother Erika Flowers, and for their allegations common to all counts of this

Complaint seek redress for acts committed by all above-named Defendants under color of law.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues raised herein.

## PRELIMINARY STATEMENT

1.      This is an action for damages brought to redress the deprivation, under color of

state law, of rights, privileges and immunities secured to Decedent, Marques Davis ("Davis"),

and Plaintiffs by provisions of the Eighth Amendment of the United States Constitution and the

laws of the State of Kansas.

2.      Plaintiffs allege that while Davis was confined to the Hutchinson Correctional

Facility ("HCF"), in the care, custody, and control of the Kansas Department of Corrections

("KDOC"), he was denied timely access to adequate and competent medical care for evaluation

and treatment of serious medical conditions. As a direct and proximate result of Defendants'

disregard of both Decedent Marques Davis' serious medical condition and accepted correctional

medical practices, which were occasioned by Defendants under color of state law, Davis was not

only forced to suffer from an untreated and progressively debilitating neurological condition for

nearly eight (8) months, but he died a horrible and preventable death.

5

3.     Davis' injuries are the product of Defendants' collective and cooperative promulgation tacit authorization, and application of official departmental, institutional, and corporate policies, procedures, practices and customs that not only contemplate a deliberate and systematic disregard for known, obvious, and excessive risks to inmate health and safety, but are also very likely to culminate in a *de facto* denial of access to adequate medical care and treatment for Davis and the Hutchinson Correctional Facility population as a whole. As such, said policies, procedures, practices and customs are shocking to the conscience and evince the kind of arbitrariness and abuse of power that operates to deprive Davis and other similarly situated inmates of their constitutional rights.

4.     Said policies, procedures, customs, practices, and actions contemplate a continuing, persistent, and widespread pattern of official misconduct that comprises the moving force behind Decedent Marques Davis' injuries and evidences deliberate indifference to the health and safety of all inmates confined to the Hutchinson Correctional facility in violation of the Eighth Amendment of the United States Constitution and the laws of the State of Kansas, giving rise to both federal and state law claims.

<u>JURISDICTION AND VENUE</u>

5.     As Plaintiffs present Federal claims arising under the Eighth Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment, and 42 U.S.C. § 1983, jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.  Pursuant to 28 U.S.C. § 1367, this Court also has jurisdiction to hear Plaintiffs supplemental state law claims because all claims herein are so related to each other that they form part of the same case or controversy under Article III of the United States Constitution.

6

6.     This Court has jurisdiction over Defendants because the unlawful acts alleged in this Complaint were committed in Hutchinson, Reno County, Kansas, which lies within the District of Kansas.

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 105(b) and 1391 because a substantial part of the events and/or omissions giving rise to Plaintiffs' claims occurred in Hutchinson, Reno County, Kansas, which lies within the District of Kansas, and, because, on information and belief, some of the Defendants reside within the District of Kansas. Furthermore, Defendant Corizon Health, Inc. is subject to personal jurisdiction in the District of Kansas as alleged in Paragraph 6, above.

## PLAINTIFFS

8.     At all material times, Plaintiff Shermaine Walker ("Walker") is and was the surviving natural mother of Decedent Marques Davis and an heir at law of the deceased. Plaintiff Walker is a citizen of the United States and the State of Kansas. She resides at the above captioned address in Wichita, Sedgewick County, Kansas in the District of Kansas. Plaintiff Walker is a proper party to bring this suit for the wrongful death of Decedent Marques Davis pursuant to K.S.A. §§ 60-1901 – 1905.

9.     At all material times, Plaintiff I.D.F., a minor, is and was the surviving natural daughter of Decedent Marques Davis and an heir at law of the deceased. Plaintiff I.D.F. is a citizen of the United States and the State of Kansas. She resides with her natural mother and Next Friend, Erika Flowers, at the above captioned address in Wichita, Sedgewick County, Kansas in the District of Kansas. Plaintiff I.D.F. is a proper party to bring this suit for the wrongful death of Decedent Marques Davis pursuant to K.S.A. §§ 60-1901 – 1905.

7

10.    Erika Flowers is the biological mother of minor I.D.F., and serves as her Next Friend in this action, pursuant to Kansas Supreme Court Rule § 60-217(c).

11.    At all material times, Decedent Marques Davis was an inmate at Hutchinson Correctional Facility, 500 Reformatory Street, Hutchinson, Kansas 67501 and at the time of his death on April 13, 2017. The Estate of Marques Davis is a party to this action by and through Plaintiff Walker in her capacity as Special Administrator of the Estate of Marques Davis in accordance with K.S.A. § 60-1801.

DEFENDANTS

12.    Defendant Corizon, Inc. ("Corizon"), f/k/a Correctional Medical Services ("CMS") and alternately known as Corizon, L.L.C., is a duly organized Kansas corporation.  Upon information and belief, and at all material times, Corizon was contracted by KDOC ("KDOC Contract") to provide comprehensive health care services for inmates confined to KDOC correctional institutions, including the HCF, where Davis was confined and where the acts and omissions that gave rise to Plaintiffs' claims occurred.  As such, at all material, and while acting under color of state law, Corizon not only materially participated in the promulgation of official policies, but it was also contractually obligated to train supervise, direct, and control all institutional medical and nursing personnel.

13.    Defendant Paul Corbier, M.D. ("Corbier") is a citizen of the United States and was, at all material times, the Regional Medical Director for Corizon.  As the Regional Medical Director, at material times, and while acting under the color of state law, Corbier not only coordinated all managed care activities – including utilization management and quality improvement activities – ensured the delivery of quality health care in all KDOC institutions, and served as a primary corporate liaison to KDOC, but he also exercised final corporate

8

decision-making authority over institutional medical policies and procedures and personally and materially participated in the promulgation and approval of HCF policies and procedures governing the provision of health care services.  Plaintiffs' bring suit against Defendant Corbier in his individual and official capacities.

14.    Defendant Dr. John/Jane Doe #1 ("Doe #1") is a citizen of the United States and was, at all material times, the Corizon Medical Director for the HCF.  As the Medical Director of the HCF, at all material times, and while acting under the color of state law, Doe #1 was not only responsible for monitoring all aspects of healthcare services at the HCF – including utilization management, quality improvement, and the review and endorsement of nursing protocols and HCF healthcare unit policies and procedures – and exercised final corporate decision-making authority over medical policies and procedures at the HCF, but he/she also personally and materially participated in the promulgation and approval of HCF policies, procedures, practices, and customs governing the provision of health care services.  Plaintiffs bring suit against Defendant Doe #1 in his/her individual and official capacities.

15.    Defendant John/Jane Doe #2 ("Doe #2") is a citizen of the United States and was, at all material times, the Corizon Health Services Administrator ("HSA") for the HCF.  As the HSA of the HCF, at all material times, and while acting under the color of state law, Doe #2 not only served as the Chief On-Site Administrative Manager and was responsible for the preparation of periodic utilization reports for KDOC and Defendant Corizon, but he/she also exercised final corporate decision-making authority over medical policies and procedures at the HCF and personally and materially participated in utilization management and quality improvement activities as well as the promulgation and approval of HCF policies, procedures,

9

practices, and customs governing the provision of health care services. Plaintiffs bring suit against Defendant Doe #2 in his/her individual and official capacities.

16.    Defendant John/Jane Doe #3 ("Doe #3") is a citizen of the United States and was, at all material times, the Corizon Director of Nursing ("DON") for the HCF.  As the DON of the HCF, at all material times, and while acting under the color of state law, Doe #2 was not only responsible for ensuring compliance with HCF medical policies and procedures, but he/she also personally and materially participated in performance audits of nursing personnel, site accreditation activities, quality improvement, and orientation and training for new hires. Plaintiffs bring suit against Defendant Doe #3 in his/her individual and official capacities.

17.    Based upon information and belief, Defendant Sohaib Mohiuddin, M.D. ("Mohiuddin"), a duly licensed physician, is a Corizon employee who at all material times was assigned to the HCF. At all material times, Defendant Mohiuddin was acting under color of state law. Based upon information and belief, Defendant Mohiuddin is a citizen and resident of the State of Kansas. Plaintiffs bring suit against Defendant Mohiuddin in his individual and official capacities.

18.    Based upon information and belief, Defendant Karl Saffo, M.D. ("Saffo"), a duly licensed physician, is a Corizon employee who at all material times was assigned to the HCF. At all material times, Defendant Saffo was acting under color of state law. Based upon information and belief, Defendant Saffo is a citizen and resident of the State of Kansas. Plaintiffs bring suit against Defendant Saffo in his individual and official capacities.

19.    Based upon information and belief, Defendant Heather Ungeheur ("Ungeheur"), a duly licensed nurse, is a Corizon employee who at all material times was assigned to the HCF. At all material times, Defendant Ungeheur was acting under color of state law. Based upon

10

information and belief, Defendant Ungeheur is a citizen and resident of the State of Kansas. Plaintiffs bring suit against Defendant Ungeheur in her individual and official capacities.

20.   Based upon information and belief, Defendant Nancy Cisky, a duly licensed nurse, is a Corizon employee who at all material times was assigned to the HCF. At all material times, Defendant Cisky was acting under color of state law. Based upon information and belief, Defendant Cisky is a citizen and resident of the State of Kansas. Plaintiffs bring suit against Defendant Cisky in her individual and official capacities.

21.   Based upon information and belief, Defendant Lisbeth Lieber ("Lieber"), a duly licensed nurse, is a Corizon employee who at all material times was assigned to the HCF. At all material times, Defendant Lieber was acting under color of state law. Based upon information and belief, Defendant Lieber is a citizen and resident of the State of Kansas. Plaintiffs bring suit against Defendant Leiber in her individual and official capacities.

22.   Based upon information and belief, Defendant Ashley C. Barta ("Barta"), a duly licensed nurse, is a Corizon employee who at all material times was assigned to the HCF. At all material times, Defendant Barta was acting under color of state law. Based upon information and belief, Defendant Barta is a citizen and resident of the State of Kansas. Plaintiffs bring suit against Defendant Barta in her individual and official capacities.

23.   Based upon information and belief, Defendant Rhonda Durant ("Durant"), a duly licensed nurse, is a Corizon employee who at all material times was assigned to the HCF. At all material times, Defendant Durant was acting under color of state law. Based upon information and belief, Defendant Durant is a citizen and resident of the State of Kansas. Plaintiffs bring suit against Defendant Durant in her individual and official capacities.

11

24.  Based upon information and belief, Defendant Debra Lundry ("Lundry"), a duly licensed nurse, is a Corizon employee who at all material times was assigned to the HCF. At all material times, Defendant Lundry was acting under color of state law. Based upon information and belief, Defendant Lundry is a citizen and resident of the State of Kansas. Plaintiffs bring suit against Defendant Lundry in her individual and official capacities.

25.  Based upon information and belief, Defendant Jennifer Helus ("Helus"), a duly licensed nurse, is a Corizon employee who at all material times was assigned to the HCF. At all material times, Defendant Helus was acting under color of state law. Based upon information and belief, Defendant Helus is a citizen and resident of the State of Kansas. Plaintiffs bring suit against Defendant Helus in her individual and official capacities.

26.  Based upon information and belief, Defendant Sarah Mendoza ("Mendoza"), a duly licensed nurse, is a Corizon employee who at all material times was assigned to the HCF. At all material times, Defendant Mendoza was acting under color of state law. Based upon information and belief, Defendant Mendoza is a citizen and resident of the State of Kansas. Plaintiffs bring suit against Defendant Mendoza in her individual and official capacities.

27.  Based upon information and belief, Defendant Barbara Dickerson ("Dickerson"), a duly licensed nurse, is a Corizon employee who at all material times was assigned to the HCF. At all material times, Defendant Dickerson was acting under color of state law. Based upon information and belief, Defendant Dickerson is a citizen and resident of the State of Kansas. Plaintiffs bring suit against Defendant Dickerson in her individual and official capacities.

28.  Based upon information and belief, Defendant Karen Dennis ("Dennis"), a duly licensed nurse, is a Corizon employee who at all material times was assigned to the HCF. At all material times, Defendant Dennis was acting under color of state law. Based upon information

12

and belief, Defendant Dennis is a citizen and resident of the State of Kansas. Plaintiffs bring suit against Defendant Dennis in her individual and official capacities.

29.  Based upon information and belief, Defendant Kelly French ("French"), a duly licensed nurse, is a Corizon employee who at all material times was assigned to the HCF. At all material times, Defendant French was acting under color of state law. Based upon information and belief, Defendant French is a citizen and resident of the State of Kansas. Plaintiffs bring suit against Defendant French in her individual and official capacities.

30.  Based upon information and belief, Defendant Jennifer Vest ("Vest"), a duly licensed nurse, is a Corizon employee who at all material times was assigned to the HCF. At all material times, Defendant Vest was acting under color of state law. Based upon information and belief, Defendant Vest is a citizen and resident of the State of Kansas. Plaintiffs bring suit against Defendant Vest in her individual and official capacities.

<u>FACTUAL ALLEGATIONS</u>

31.  On March 12, 2010, Davis was sentenced to serve time in the Kansas penal system.

32.  In June of 2016, Davis was transferred from Eldorado Correctional Facility to HCF.

33.  Prior to his arrival at HCF, Davis was by all accounts a healthy 27 year-old man.

34.  In July and August 2016, Davis began experiencing numbness in his feet, weakness of his right leg, and severe mid-back pain. He reported his complaints to numerous Corizon healthcare providers at the HCF medical unit.

35.  A Corizon physician documented Davis' symptoms to be caused by his blood pressure medication. Davis' blood pressure medication was then stopped.

13

36. However, in September, Davis' symptoms worsened. He experienced extreme difficulty walking and was documented by Corizon healthcare providers to be using a cane for mobility.

37. During September 2016, Davis made approximately twelve (12) visits the medical unit concerning numbness in his feet, weakness of his right leg, severe mid-back pain, and an increasing inability to walk. He was recorded stating, "I can barely walk on my right leg." Davis' numbness became so severe he fell in his cell block on September 5, 2016. He then began falling again and again because of worsening numbness in his lower extremities.

38. In response to Davis' symptoms, Corizon healthcare providers prescribed Tylenol and ordered a lumbar x-ray, but documented they believed Davis to be faking his symptoms.

39. In September 2016, Walker, Davis' mother, visited Davis every weekend as she had for most of the time he had been incarcerated. During a September 2016 visit with Davis, Walker noted her son now looked ill and was beginning to have difficulty walking. She would continue to visit her son nearly every weekend and would note a visible and drastic decline in his health.

40. Starting in September 2016, Walker began calling Corizon healthcare providers on a daily basis requesting her son receive medical attention.

41. During October 2016, Davis continued experiencing numbness in his feet, weakness of his right leg, severe mid-back pain, and an increasing inability to walk. During this time, Davis made eight (8) visits to the medical unit complaining of the above symptoms.

42. During October 2016, upon information and belief, Walker continued making daily phone telephone calls to Corizon healthcare providers requesting her son receive medical care. Walker continued to receive the same answer, "your son is fine."

14

43.     Walker also continued visiting Davis on the weekends. She continued to observe her son having extreme difficulty walking.

44.     On October 25, 2016, Corizon physician, Defendant Saffo, documented Davis' limping is now "very visible" and that "he has some muscle weakness in his right lower extremity." Saffo documented he would seek approval for EMG studies of Davis' lower extremities.

45.     On October 25, 2016, a Corizon nurse documented a referral is needed for an MRI.

46.     On October 31, 2016, Saffo examined Davis and noted muscle weakness in his right leg and numbness in both of his feet. Additionally, Saffo, documented Davis' muscle strength and range of motion are impaired. Saffo noted "[Davis] has lost vibration test in right leg… Raising the right leg by his muscle strength is impaired to 30 degrees."

47.     Neither an MRI nor EMG studies took place during October 2016.

48.     During November 2016, Davis continued experiencing numbness in his feet, weakness of his right leg, severe mid-back pain, and an increasing inability to walk. During this time, Davis made five (5) visits to the medical unit complaining of the above symptoms.

49.     During November 2016, upon information and belief, Walker continued making daily phone telephone calls to Corizon healthcare providers requesting her son receive medical care. Walker continued to receive the same answer, "your son is fine."

50.     Walker also continued visiting Davis on the weekends. She observed her son having extreme difficulty walking and would often have to catch her son to prevent him from falling.

51.     Upon information and belief, at some point in November, Davis received EMG studies of his lower extremities only.

52. On November 21, 2016, Davis was examined by a neurology consultant, who deferred any evaluation and treatment of his "subjective weakness" to Corizon healthcare providers. During such consultation, Davis' lower extremities EMG results are documented as normal.

53. During December 2016, Davis continued experiencing numbness in his feet, weakness of his right leg, severe mid-back pain, and an increasing inability to walk. During this time, Davis made eight (8) visits to the medical unit.

54. During December 2016, upon information and belief, Walker continued making daily phone telephone calls to Corizon healthcare providers requesting her son receive medical care. Walker continued to receive the same answer, "your son is fine."

55. Walker also continued visiting Davis on the weekends. She continued to observe her son having extreme difficulty walking and would often have to catch her son to prevent him from falling.

56. On December 15, 2016, in addition to his previous chronic complaints, Davis began complaining of pain, numbness, and itching in his arms that radiated down his arms from his elbows to his fingertips.

57. On December 27, 2016, during a visit to the medical unit Davis reported "it feels like something is eating my brain." Corizon healthcare providers documented Davis' walking was getting more severe, he was getting dizzy, and having hot sweats. At that time, Davis requested a wheel chair, but upon information and belief was denied such wheel chair. Davis also requested an MRI.

58.    During January 2017, Davis continued experiencing numbness in his feet, weakness of his right leg, severe mid-back pain, an increasing inability to walk, numbness in his hands, and dizziness.

59.    During January 2017, upon information and belief, Walker continued making daily phone telephone calls to Corizon healthcare providers requesting her son receive medical care. Walker continued to receive the same answer, "your son is fine."

60.    Walker also continued visiting Davis on the weekends. She continued to observe her son having extreme difficulty walking and would often have to catch her son to prevent him from falling. She would now routinely have to wipe sweat from her son's face during her visits.

61.    Davis made four (4) visits to the medical unit before January 19, 2017. During these visits to the medical unit he complained of the same symptoms he had been suffering from for the last four to five months. Corizon healthcare providers continued to give Davis Tylenol in response to his complaints.

62.    On January 5, 2017, Davis went to the medical unit and stated, "now my hands are going numb."

63.    On January 19, 2017, Davis passed out when attempting to use the phone. He was placed in the infirmary for observation concerning fainting, weakness, tingling and numbness in the extremities, and difficulty walking. Corizon healthcare providers placed him on prednisone for ten days without documenting any diagnosis.

64.    Davis remained in the infirmary under observation until February 14, 2017.

65.    During Davis' time in the infirmary, he continued to suffer from numbness in his feet, weakness of his right leg, severe mid-back pain, an increasing inability to walk, numbness in his hands, and dizziness.

17

66. Davis continued to ask Corizon healthcare providers what was wrong with his body. There were no responses provided in Davis' medical records.

67. On February 5, 2017, Corizon healthcare providers documented they were going to pursue a neurology consult for Davis. Davis does not and will not receive this neurology consult.

68. During Davis' time in the infirmary, numerous Corizon healthcare providers documented he was faking his illness. One Corizon nurse documented Davis was "walking normal in infirmary until he sees the RN watching then starts to limping."

69. During Davis' time in the infirmary during January and February 2017, Corizon healthcare providers only provided Tylenol, predisone, and constipation medication to him.

70. On February 14, 2017, Davis was discharged from the infirmary.

71. On February 21, 2017, Davis returned to the medical unit for a follow-up visit. He was then complaining of numbness in his feet, weakness of his right leg, severe mid-back pain, an increasing inability to walk, numbness in his hands, dizziness, and persistent headaches. During this visit, Corizon healthcare providers documented a neurology consult was NOT APPROVED and that an EKG done during the visit was abnormal. No action by Corizon healthcare providers was documented.

72. On February 23, 2017, Davis was brought to the medical unit by a corrections officer. Davis was then suffering from vision problems in addition to his previous ailments. During this visit, Davis was documented to be "dizzy and unsteady on his feet." Corizon healthcare providers also documented Davis was having trouble tracking with his eyes, sluggish pupillary reaction and erratic eye movement.

18

73.    On February 27, 2017, Davis reported to the infirmary again complaining primarily about dizziness. He was placed in the infirmary for 23 hours. He was discharged from the infirmary on February 28, 2017.

74.    During March 2017, Davis' condition declined even more. Up until March 25, 2017, Davis made seven (7) visits to the medical unit. He continued to suffer from numbness in his feet, weakness of his right leg, severe mid-back pain, an increasing inability to walk, numbness in his hands, dizziness, vision problems, and migraines. However, numerous Corizon healthcare providers continued to document Davis was faking his symptoms.

75.    During March 2017, upon information and belief Walker continued making daily telephone calls to Corizon staff requesting her son receive medical care. She continued to be met with the same answer, "your son is fine."

76.    On March 25, 2017, Davis arrived at the medical unit for an emergency visit. Corizon healthcare provider, Nina Morales, LPN documents "[Davis] also reports dizziness, balance disturbances, and decreased vision to right eye. Fingers to hands are stiff and bent in abnormal directions. Arms shake uncontrollably." He was released from the infirmary.

77.    At approximately 6:41 p.m. on March 25, 2017, Davis was found lying on the cell house floor outside of his cell. He was then seen by Corizon healthcare providers. Corizon healthcare providers documented Davis was complaining of dizziness and noted visible trembling in both of his arms. He was then admitted to the infirmary and issued a dose of Tylenol. Immediately after Davis was admitted to the infirmary, Corizon health care providers documented his "whole body is shaking."

78.    On March 26, 2017, Davis' condition worsened. Davis still suffering from numbness in his feet, weakness of his right leg, severe mid-back pain, an increasing inability to

19

walk, numbness in his hands, dizziness, vision problems, and migraines began acting erratically and uncharacteristically. He then needed assistance using the toilet and began urinating in cups and his water pitcher. Because of his bizarre behavior, he was moved to an isolation cell within the infirmary.

79.   On March 26, 2017, Corizon healthcare providers documented Davis' brain MRI came back as "normal" and that a neurology consult has been ordered. However, at this point in time, Davis had never received an MRI of his brain. The only MRI of his brain he would ever receive during his treatment with Corizon would be the MRI conducted the day before he suffered brain death.

80.   During the remainder of March and the beginning of April, Davis' condition continued to worsen. Davis continued to suffer from the same symptoms he had been for the last seven months. Upon information and belief, Walker continued making daily telephone calls to Corizon healthcare providers begging them to treat her son. She continued to receive the same response, "your son is fine."

81.   Between March 31, 2017 and April 12, 2017, Davis showed symptoms of incontinence. Davis frequently urinated and defecated on himself, and made no attempt to clean up. He became increasingly confused as he began slurring his speech, talking incoherently, and drinking his own urine.

82.   He had noticeably lost weight and was only eating small amounts of his meals. During Walker's last visit with her son sometime in late March, Walker noted that her son was now extremely pale, unable to walk, shaking uncontrollably, and was unable to hug his mother.

20

83. After Walker's last visit with her son in late March, she attempted to visit every weekend until Davis' death. Every time she attempted to see her son, she was told by HCF and Corizon staff that Davis was unable to leave the infirmary.

84. During this time, Walker called Corizon health care providers nearly every day asking about her son's medical condition. Defendant Lundry responded to Walker and repeatedly told her that her son was "fine," that "he's up moving around," that "he's doing well," and that "he's eating again." During this time, all of Lundry's statements to Walker were contrary to Davis' medical records.

85. At the same time, Corizon healthcare providers continued to dismiss Davis' complaints as fake, but ordered a neurology consult "ASAP." A neurology consult was documented to take be scheduled on June 22, 2017. However, Davis would never live to receive this neurology consult.

86. Davis received an MRI of his brain on April 11, 2017.

87. The April 11, 2017 MRI results indicated a wide-spread infection throughout Davis' brain and evidence of tonsillar herniation.

88. Davis was not immediately hospitalized after the results of his MRI. Instead, he was moved back to his isolation cell within the infirmary by Corizon healthcare providers.

89. At approximately 12:25 p.m. on April 12, 2017, Davis went into cardio-pulmonary arrest. At approximately 12:42 p.m. Corizon healthcare providers began administering CPR and notified EMS.

90. Davis was taken to Hutchinson Regional Medical Center where he was declared brain dead. At Hutchinson Regional Medical Center, a brain CT showed dramatic swelling of the

21

brain sufficient to force the upper part of the brain down into the lower part of the brain, a condition called tonsillar herniation. There was no hope of recovery for Davis.

91.    Shortly after Davis was declared brain dead, Defendant Corbier spoke to Davis' Hutchinson Regional Medical Center physicians and authorized them to terminate life support before Davis' mother was notified of her son's brain death.

92.    On April 13, 2017, with no hope of recovery and total brain death, life support was terminated and Davis died.

93.    An autopsy revealed a diagnosis of far advanced Granulomatous Meningoencephalitis, involving lungs, liver, kidney, and brain.

94.    Over the course of nearly eight months, Corizon healthcare providers allowed Davis' disease to dramatically worsen resulting in Davis suffering extreme emotional and physical distress and eventually death.

95.    Over the course of nearly eight months, Davis and his mother, Walker filed numerous grievances and sick calls, which only resulted in Corizon healthcare staff continuing to do nothing to help Davis.

96.    Davis suffered from unnecessary and wanton infliction of pain because of the clear and deliberate indifference to his serious medical needs and the reticence of Corizon personnel to utilize offsite specialty medical providers to diagnose and treat his progressively degenerative condition. His death was the product of official policies, procedures, practices, customs, and actions collectively promulgated, tacitly authorized, and/or observed by Defendants.

97.    Through their deliberate indifference to Davis' serious medical needs, Defendants collectively subjected him to and engaged in conduct that deprived Davis of his constitutional

22

right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment to the United States Constitution as applied to the States through the Fourteenth Amendment.

98.    KDOC and Corizon's policies, procedures, practices, customs, and actions – which, through the conduct and deliberate omissions of Corizon personnel assigned to the HCF, were so persistent and widespread as to represent official policy and action – recklessly disregarded substantial risk of serious harm to all inmates, including Davis, and inflicted injuries that are actionable under 42 U.S.C. § 1983.

99.    Corizon's abdication of policy-making and oversight responsibilities, their collective and tacit authorization of personnel misconduct, and/or their inadequate policies, procedures, practices, customs, and actions – as well as their inadequate training, supervision, direction, and control that, if effective, would have eliminated those systemic deficiencies – rose to the level of deliberate indifference and resulted in a constitutional injury that manifested itself in the unnecessary and wanton infliction of pain and Davis' death.

100.    More specifically, Corizon's inadequate policies, procedures, practices, customs, and actions – as well as their inadequate training, supervision, direction, and control that, if effective, would have eliminated those systemic deficiencies – permitted, *inter alia*:

    a.    Dismissing HCF inmate medical complaints as fabricated;

    b.    Providing insufficient medical coverage for inmates of HCF;

    c.    Refusing to refer ill inmates to the hospital in order to save money;

    d.    Hiring medical and nursing personnel indifferent to the medical needs of HCF inmates;

    e.    Denying HCF inmates medically necessary transfers to the hospital;

    f.    Denying HCF inmates necessary medical care;

23

g.  Hiring medical personnel indifferent to medical emergencies;

h.  Utilizing conservative treatment methodologies unless or until a medical condition becomes emergent, in contravention of prevailing medical practices;

i.  Providing belated or untimely authorization of off-site specialty medical care and treatment;

j.  Delegating clinical determinations to nursing personnel who are neither qualified nor licensed to independently make such determinations;

k.  Failure to inform inmates of their conditions and diagnoses and to permit them to participate in decisions involving their care;

l.  Failure to provide inmates with qualified medical opinions rendered by on-site and off-site physicians;

m.  Failing to train medical personnel and nursing staff

n.  Failures to make timely referrals for offsite specialty medical and diagnostic services, even when the need is obvious to a lay person and both medically necessary and appropriate;

o.  Belated or untimely authorization of offsite specialty medical care and treatment;

p.  Discouraging medical and nursing personnel from making referrals for offsite specialty medical services;

q.  Improper application of evidence-based clinical guidelines (InterQual/Milliman and Robertson) for the purposes of denying and/or delaying medical care;

r.  Delay or non-responses to urgent and/or debilitating conditions;

s.  Failures to ensure inmates have timely access to care and to medical personnel who are qualified to diagnose and treat;

24

t.  Failures to provide cogent nursing directives for prioritizing requests for medical services and sick calls;

u.  Failures to ensure medical/nursing staff competency, including the establishment of policies, procedures, and processes to detect and respond to incompetency;

v.  Poor quality nursing, including failures to note urgencies, detect progressively degenerating conditions, and noting conditions that require further evaluation and treatment;

w.  Delegation of clinical determinations to nursing personnel who are neither qualified nor licensed to independently make such determinations;

x.  Failures to provide continuity of care by not documenting clinical observations, not properly diagnosing medical conditions, and not providing adequate treatment; and

y.  Failures to maintain adequate medical records by maintaining some in hard-copy/paper format and others in a digital format.

z.  Failing to meet widely accepted community standards of care with regard to medical services for ill and/or injured inmates of HCF.

101.  The systemic deficiencies listed in Paragraph 100, above, are the product of official policies, procedures, practices, customs, and actions that were promulgated or tacitly authorized by KDOC and Corizon personnel vested with final decision-making authority – and all of them caused or materially contributed to the systemic and unconstitutional deliberate indifference to Davis' serious medical needs, the unnecessary and wanton infliction of pain he experienced, and his death.

25

102. KDOC's and Corizon's official policies, procedures, practices, customs, and actions, which are the moving force behind Davis' injuries, operated to deprive Davis of the right to adequate and appropriate diagnosis of his serious medical conditions, and, but for the same, he would not have been deprived of rights secured by the Eighth and Fourteenth Amendments to the United States Constitution.

103. Collectively Defendants' acts and omissions not only contemplate a reckless disregard of substantial risks of serious harm to inmate health and safety, but said acts and omissions are also sufficiently harmful to evidence deliberate indifference to the serious medical needs of Davis and the other inmates in their charge.

104. Defendants' acts and omissions were not only intentionally willful, wanton, reckless and malicious – in that they are the product of utilization management practices that elevate cost savings over prevailing medical practices and patient care – but they also evince a complete and deliberate indifference to and both a conscious and a reckless disregard of the rights of Davis and all inmates in the custody of the KDOC. Therefore, Plaintiffs are entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from engaging in like conduct in the future.

105. Plaintiffs are entitled to recover their reasonable attorney's fees, costs, and expenses from Defendants as provided by 42 U.S.C. § 1988.

**COUNT I: DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED
AND FAILURE TO PROVIDE MEDICAL CARE AND TREATMENT
42 U.S.C. § 1983
Eighth and Fourteenth Amendments to the Constitution of the United States
Defendants Corizon Health, Inc., Corbier, Doe #1, Doe #2, and Doe #3
in their Individual and Official Capacities**

26

COME NOW Plaintiffs, and for Count I of this First Amended Complaint against Defendants Corizon Health, Inc., Corbier, Doe #1, Doe #2, and Doe #3, state and allege as follows:

106. Plaintiffs hereby incorporate each of the preceding paragraphs as though fully set forth herein.

107. At all material times, Defendants Corbier, Doe #1, Doe #2, and Doe #3 (Corizon Management Defendants") not only held regional supervisory and management positions with Defendant Corizon, were vested with final decision-making authority, and acted under color of state law, but they were also directly and materially involved with HCF committees that reviewed and analyzed all aspects of institutional healthcare delivery.

108. The corporate policies and procedures observed by Corizon personnel assigned to HCF – including, but not limited to, those outlined in: the Corizon "Company Policies and Procedures;" the Corizon PIP manual; the Corizon CQI Manual; the Corizon CCC Manual; the Corizon Evidence-Based Guidelines Manual; the Corizon UM Manual; and the Corizon clinical pathways and nursing protocols – were promulgated, approved, and signed by the Corizon Management Defendants.

109. The customs and practices observed by Corizon personnel assigned to HCF were tacitly approved by the Corizon Management Defendants. Said practices and customs were so persistent and widespread so as to constitute official policies and actions.

110. Collectively, the official institutional and corporate policies, procedures, customs, and practices observed by Corizon personnel assigned to HCF not only posed a substantial risk of serious harm to Davis' health and safety and rise to the level of deliberate indifference, but they also operated to deprive Davis of his right to be free from cruel and unusual punishment by:

27

(a) delaying any meaningful diagnosis and/or treatment of his illness causing him to suffer from severe, debilitating, and painful symptoms for nearly eight months prior to his death; (b) failing to provide a medically necessary transfer to a competent medical facility resulting in Decedent suffering brain death and death; and (c) failing to provide Decedent any meaningful medical care in a manner consistent with prevailing medical practices.

111.  Said institutional and corporate policies, procedures, customs, practices and official actions outlined in Paragraphs 1 through 105, above, subjected Davis to the unnecessary and wanton infliction of pain in contravention of the Eight Amendment and demonstrate a deliberate indifference to his serious medical needs by occasioning and/or tacitly authorizing deficiencies that include:

    a.  Dismissing HCF inmate medical complaints as fabricated;

    b.  Providing insufficient medical coverage for inmates of HCF;

    c.  Refusing to refer ill inmates to the hospital in order to save money;

    d.  Hiring medical and nursing personnel indifferent to the medical needs of HCF inmates;

    e.  Denying HCF inmates medically necessary transfers to the hospital;

    f.  Denying HCF inmates necessary medical care;

    g.  Hiring medical personnel indifferent to medical emergencies;

    h.  Utilizing conservative treatment methodologies unless or until a medical condition becomes emergent, in contravention of prevailing medical practices;

    i.  Providing belated or untimely authorization of off-site specialty medical care and treatment;

28

j.  Delegating clinical determinations to nursing personnel who are neither qualified nor licensed to independently make such determinations;

k.  Failure to inform inmates of their conditions and diagnoses and to permit them to participate in decisions involving their care;

l.  Failure to provide inmates with qualified medical opinions rendered by on-site and off-site physicians;

m.  Failing to train medical personnel and nursing staff

n.  Failures to make timely referrals for offsite specialty medical and diagnostic services, even when the need is obvious to a lay person and both medically necessary and appropriate;

o.  Belated or untimely authorization of offsite specialty medical care and treatment;

p.  Discouraging medical and nursing personnel from making referrals for offsite specialty medical services;

q.  Improper application of evidence-based clinical guidelines (InterQual/Milliman and Robertson) for the purposes of denying and/or delaying medical care;

r.  Delay or non-responses to urgent and/or debilitating conditions;

s.  Failures to ensure inmates have timely access to care and to medical personnel who are qualified to diagnose and treat;

t.  Failures to provide cogent nursing directives for prioritizing requests for medical services and sick calls;

u.  Failures to ensure medical/nursing staff competency, including the establishment of policies, procedures, and processes to detect and respond to incompetency;

29

    v.   Poor quality nursing, including failures to note urgencies, detect progressively degenerating conditions, and noting conditions that require further evaluation and treatment;

    w.  Delegation of clinical determinations to nursing personnel who are neither qualified nor licensed to independently make such determinations;

    x.   Failures to provide continuity of care by not documenting clinical observations, not properly diagnosing medical conditions, and not providing adequate treatment; and

    y.   Failures to maintain adequate medical records by maintaining some in hard-copy/paper format and others in a digital format.

    z.   Failing to meet widely accepted community standards of care with regard to medical services for ill and/or injured inmates of HCF.

112. All of the systematic deficiencies outlined in Paragraph 111, above, are the product of official policies, procedures, customs, practices, and actions that were promulgated, occasioned, and/or tacitly authorized by Corizon Management Defendants– and all of them caused or materially contributed to the systemic and unconstitutional deliberate indifference to Davis' serious medical needs and the unnecessary and wanton infliction of pain he experienced.

113. KDOC and Corizon's official policies, procedures, customs, practices, and actions, which comprise the moving force behind Davis' injuries and death, operated to deprive Davis of the right to adequate and appropriate diagnosis and treatment of his serious medical conditions, and, but for the same, he would not have been deprived of rights secured by the Eight Amendment of the United States Constitution.

30

114. As a direct and proximate result of the violation of his civil rights by Defendant Corizon and the Corizon Management Defendants, Davis suffered the following injuries:

   a. He suffered for months from an excruciating illness that ended up taking his life;

   b. He suffered great pain of the body and mind;

   c. He sustained significant mental and physical suffering;

   d. He suffered the loss of his enjoyment of life for the last eight months of his life;

   e. The inability to walk without experiencing great pain;

   f. Contortion of his hands and fingers;

   g. Partial paralysis;

   h. The inability to see clearly;

   i. He was forced into a state of fear for the last eight months of his life;

   j. Brain death; and

   k. Death.

115. As a direct and proximate result of the violation of Davis' civil rights by Defendant Corizon and the Corizon Management Defendant, Plaintiffs suffered the following injuries:

   a. They experienced tremendous mental anguish, suffering, and bereavement;

   b. They lost Davis' parental care, guidance, and protection;

   c. They lost Davis' comfort, companionship, and consortium; and

   d. They lost the opportunity to see Davis live and thrive.

116. Corizon and the Corizon Management Defendants' official acts and omissions, were not only intentionally willful, wanton, reckless, and malicious – in that they are the product of corporate utilization management practices that elevate cost savings over prevailing medical practices and patient care – but they also evince a complete and deliberate indifference to and

31

conscious and reckless disregard of the rights of Davis, Plaintiffs, and all inmates in the custody

of the KDOC. Therefore, Plaintiffs are entitled to an award of punitive or exemplary damages in

an amount sufficient to punish Defendant Corizon and the Corizon Management Defendants or

to deter said Defendants and others from like conduct in the future.

117.  Plaintiffs are entitled to their reasonable attorney fees, costs, and expenses from

Defendants as provided by 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs pray for judgment under Count I of this First Amended

Complaint against Defendants Corizon Health, Inc., Corbier, Doe #1, Doe #2, and Doe #3 for a

sum in excess of $75,000.00, and for any and all other and further damages as may be

appropriate or to which they may be entitled at law

**COUNT II: FAILURE TO TRAIN/INADEQUATE TRAINING**
**42 U.S.C. § 1983**
**Eighth and Fourteenth Amendments to the Constitution of the United States**
**Defendants Corizon Health, Inc., Corbier, Doe #1, Doe #2, and Doe #3**
**in their Individual and Official Capacities**

COME NOW Plaintiffs, and for Count II of this First Amended Complaint against

Defendants Corizon Health, Inc., Corbier, Doe #1, Doe #2, and Doe #3, state and allege as

follows:

118.  Plaintiffs hereby incorporate each of the preceding paragraphs as though fully set

forth herein.

119.  At all material times, Defendants Corbier, Doe #1, Doe #2, and Doe #3 (Corizon

Management Defendants") not only held regional supervisory and management positions with

Defendant Corizon, were vested with final decision-making authority, and acted under color of

state law, but they were also directly and materially involved with HCF committees that

32

reviewed and analyzed all aspects of institutional healthcare delivery.

120. The corporate policies and procedures observed by Corizon personnel assigned to HCF – including, but not limited to, those outlined in: the Corizon "Company Policies and Procedures;" the Corizon PIP manual; the Corizon CQI Manual; the Corizon CCC Manual; the Corizon Evidence-Based Guidelines Manual; the Corizon UM Manual; and the Corizon clinical pathways and nursing protocols – were promulgated, approved, and signed by the Corizon Management Defendants.

121. The customs and practices observed by Corizon personnel assigned to HCF were tacitly approved by the Corizon Management Defendants. Said practices and customs were so persistent and widespread so as to constitute official policies and actions.

122. By operation of the KDOC Contract and institutional and corporate policies and procedures, the Corizon Management Defendants were vested with the duty to provide reasonable and adequate training to medical and nursing personnel assigned to HCF to prevent said personnel from: (a) being deliberately indifferent to the serious medical needs of inmates; (b) delaying and/or denying inmate access to qualified health care personnel; and (c) failing to provide inmates with adequate medical care and treatment. This duty extended to Davis as well as to all other inmates confined to HCF.

123. The Corizon Management Defendants failed to provide reasonable and adequate training for medical and nursing personnel assigned to the HCF as mandated by the KDOC Contract and institutional and corporate policies and procedures. Said failure, which was tacitly authorized by the Corizon Management Defendants, was so persistent and widespread that it constituted official policy and action.

33

124.  The failure of the Corizon Management Defendants to provide such training not only resulted in the systemic deficiencies as outlined in Paragraph 111, above, but it also recklessly posed substantial risks of serious harm to the health and safety of Davis and all other inmates confined to HCF, because it operated to deprive them of their Eighth Amendment right to be free from cruel and unusual punishment and the unnecessary and wanton infliction of pain. Said failure was the moving force behind the violation of Plaintiffs and Davis' constitutional rights.

125.  But for the failure of the Corizon Management Defendants to provide reasonable and adequate training for medical and nursing personnel assigned to the HCF, Davis and Plaintiffs' constitutional rights would not have been violated and Davis would not have died.

126.  As set forth more specifically in Paragraph 114, above, Davis has been damaged as a direct and proximate result of the Corizon Management Defendants' failures and official actions.

127.  As set forth more specifically in Paragraph 115, above, Plaintiffs have been damaged as a direct and proximate result of the Corizon Management Defendants' failures and official actions.

128.  Corizon and the Corizon Management Defendants' official acts and omissions, were not only intentionally willful, wanton, reckless, and malicious – in that they are the product of corporate utilization management practices that elevate cost savings over prevailing medical practices and patient care – but they also evince a complete and deliberate indifference to and conscious and reckless disregard of the rights of Davis, Plaintiffs, and all inmates in the custody of the KDOC. Therefore, Plaintiffs are entitled to an award of punitive or exemplary damages in

34

an amount sufficient to punish Defendant Corizon and the Corizon Management Defendants or

to deter said Defendants and others from like conduct in the future.

129.  Plaintiffs are entitled to their reasonable attorney fees, costs, and expenses from

Defendants as provided by 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs pray for judgment under Count II of this First Amended

Complaint against Defendants Corizon Health, Inc., Corbier, Doe #1, Doe #2, and Doe #3 for a

sum in excess of $75,000.00, and for any and all other and further damages as may be

appropriate or to which they may be entitled at law.

**COUNT III: FAILURE TO SUPERVISE, DIRECT, AND CONTROL/ INADEQUATE
SUPERVISION, DIRECTION, AND CONTROL
42 U.S.C. § 1983
Eighth and Fourteenth Amendments to the Constitution of the United States
Defendants Corizon Health, Inc., Corbier, Doe #1, Doe #2, and Doe #3
in their Individual and Official Capacities**

COME NOW Plaintiffs, and for Count III of this First Amended Complaint against

Defendants Corizon Health, Inc., Corbier, Doe #1, Doe #2, and Doe #3, state and allege as

follows:

130.  Plaintiffs hereby incorporate each of the preceding paragraphs as though fully set

forth herein.

131.  At all material times, Defendants Corbier, Doe #1, Doe #2, and Doe #3 (Corizon

Management Defendants") not only held regional supervisory and management positions with

Defendant Corizon, were vested with final decision-making authority, and acted under color of

state law, but they were also directly and materially involved with HCF committees that

reviewed and analyzed all aspects of institutional healthcare delivery.

132.  The corporate policies and procedures observed by Corizon personnel assigned to

35

HCF – including, but not limited to, those outlined in: the Corizon "Company Policies and Procedures;" the Corizon PIP manual; the Corizon CQI Manual; the Corizon CCC Manual; the Corizon Evidence-Based Guidelines Manual; the Corizon UM Manual; and the Corizon clinical pathways and nursing protocols – were promulgated, approved, and signed by the Corizon Management Defendants.

133. The customs and practices observed by Corizon personnel assigned to HCF were tacitly approved by the Corizon Management Defendants. Said practices and customs were so persistent and widespread so as to constitute official policies and actions.

134. By operation of the KDOC Contract and institutional and corporate policies and procedures, the Corizon Management Defendants were vested with the duty to exercise reasonable and adequate supervision, direction, and control over medical and nursing personnel assigned to HCF to prevent said personnel from: (a) being deliberately indifferent to the serious medical needs of inmates; (b) delaying and/or denying inmate access to qualified health care personnel; and (c) failing to provide inmates with adequate medical care and treatment. This duty extended to Davis as well as to all other inmates confined to HCF.

135. The Corizon Management Defendants failed to adequately supervise, direct, and control medical and nursing personnel assigned to the HCF as mandated by the KDOC Contract and institutional and corporate policies and procedures. Said failure, which was tacitly authorized by the Corizon Management Defendants, was so persistent and widespread that it constituted official policy and action.

136. The failure of the Corizon Management Defendants to exercise such supervision, direction, and control not only resulted in the systemic deficiencies as outlined in Paragraph 111, above, but it also recklessly posed substantial risks of serious harm to the health and safety of

36

Davis and all other inmates confined to HCF, because it operated to deprive them of their Eighth Amendment right to be free from cruel and unusual punishment and the unnecessary and wanton infliction of pain. Said failure was the moving force behind the violation of Plaintiffs and Davis' constitutional rights.

137.  But for the failure of the Corizon Management Defendants to reasonably and adequately supervise, direct, and control medical and nursing personnel assigned to the HCF, Davis and Plaintiffs' constitutional rights would not have been violated and Davis would not have died.

138.  As set forth more specifically in Paragraph 114, above, Davis has been damaged as a direct and proximate result of the Corizon Management Defendants' failures and official actions.

139.  As set forth more specifically in Paragraph 115, above, Plaintiffs have been damaged as a direct and proximate result of the Corizon Management Defendants' failures and official actions.

140.  Corizon and the Corizon Management Defendants' official acts and omissions, were not only intentionally willful, wanton, reckless, and malicious – in that they are the product of corporate utilization management practices that elevate cost savings over prevailing medical practices and patient care – but they also evince a complete and deliberate indifference to and conscious and reckless disregard of the rights of Davis, Plaintiffs, and all inmates in the custody of the KDOC. Therefore, Plaintiffs are entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendant Corizon and the Corizon Management Defendants or to deter said Defendants and others from like conduct in the future.

37

141.  Plaintiffs are entitled to their reasonable attorney fees, costs, and expenses from Defendants as provided by 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs pray for judgment under Count III of this First Amended Complaint against Defendants Corizon Health, Inc., Corbier, Doe #1, Doe #2, and Doe #3 for a sum in excess of $75,000.00, and for any and all other and further damages as may be appropriate or to which they may be entitled at law.

**COUNT IV: DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED AND FAILURE TO PROVIDE MEDICAL CARE AND TREATMENT**
**42 U.S.C. § 1983**
**Eighth and Fourteenth Amendment to the Constitution of the United States**
**Defendants Corbier, Doe #1, Doe #2, Doe #3, Moiuddin, Saffo, Ungeheur, Ciskey, Durant,**
**Lundry, Helus, Mendoza, Dickerson, Dennis, French, and Vest**
**in their Individual and Official Capacities**

COME NOW Plaintiffs, and for Count IV of this First Amended Complaint against Defendants Corbier, Doe #1, Doe #2, Doe #3, Moiuddin, Saffo, Ungeheur, Ciskey, Durant, Lundry, Helus, Mendoza, Dickerson, Dennis, French, and Vest, state and allege as follows:

142.  Through their deliberate indifference to Davis' serious medical needs, Defendants subjected him to and engaged in conduct that deprived Davis of his constitutional right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment to the United States Constitution as applied to the States through the Fourteenth Amendment.

143.  Davis suffered from unnecessary and wanton infliction of pain because of the clear and deliberate indifference to his serious medical needs and the reticence of Corizon personnel to utilize offsite specialty medical providers to diagnose and treat his progressively degenerative condition.  His death was the product of official policies, procedures, practices, customs, and actions collectively promulgated, tacitly authorized, and/or observed by Defendants as referenced in Paragraph 100, above.

38

144. Specifically, Defendants were deliberately indifferent to Decedent Marques Davis' rights under the Eighth Amendment of the U.S. Constitution in that said defendants:

a. Failed to provide him with prompt medical attention to his serious medical needs;

b. Failed to make timely referrals for offsite specialty medical and diagnostic services;

c. Belatedly or untimely authorizing offsite specialty medical care and treatment;

d. Delayed or failed to respond to his serious medical need;

e. Utilized conservative treatment methodologies;

f. Failed to promptly transfer him from HCF to a hospital for diagnosis and treatment;

g. Seriously aggravated his medical condition by ignoring his medical condition for approximately eight months;

h. Failed to treat his serious medical need;

i. Seriously aggravated his medical condition by failing to render meaningful medical care; and

j. Failed to respond appropriately to his medical emergency.

145. After Decedent Marques Davis' abnormal April 11, 2017 MRI, Defendants Paul Corbier, M.D., Sohaib Mohiuddin, M.D., and Karl Saffo, M.D. were deliberately indifferent to his rights under the Eighth Amendment of the U.S. Constitution in that said defendants failed and refused to order immediate hospitalization in light of a life threatening, serious medical need.

146. As set forth more specifically in Paragraph 114, above, Davis has been damaged as a direct and proximate result of the Corizon Management Defendants' failures and official actions.

147. As set forth more specifically in Paragraph 115, above, Plaintiffs have been damaged as a direct and proximate result of the Corizon Management Defendants' failures and official actions.

148. Defendants' official acts and omissions, were not only intentionally willful, wanton, reckless, and malicious – in that they are the product of corporate utilization management practices that elevate cost savings over prevailing medical practices and patient care – but they also evince a complete and deliberate indifference to and conscious and reckless disregard of the rights of Davis, Plaintiffs, and all inmates in the custody of the KDOC. Therefore, Plaintiffs are entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter said Defendants and others from like conduct in the future.

149. Plaintiffs are entitled to their reasonable attorney fees, costs, and expenses from Defendants as provided by 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs pray for judgment under Count IV of this First Amended Complaint against Defendants Corbier, Doe #1, Doe #2, Doe #3, Moiuddin, Saffo, Ungeheur, Ciskey, Durant, Lundry, Helus, Mendoza, Dickerson, Dennis, French, and Vest for a sum in excess of $75,000.00, and for any and all other and further damages as may be appropriate or to which they may be entitled at law.

### COUNT V: NEGLIGENCE – WRONGFUL DEATH (STATE LAW)
### All Defendants

COME NOW Plaintiffs, Shermaine Walker and I.D.F., a minor, by and through her Next Friend and mother Erika Flowers, and for Count V of this First Amended Complaint against all Defendants, state and allege as follows:

150. Plaintiffs hereby incorporate each of the preceding paragraphs as though fully set

40

forth herein.

151.  Defendants owed to Davis a duty to use that degree of skill, care, learning, and judgment ordinarily used under the same or similar circumstances by members of their profession.

152.  Defendants failed to use that degree of skill, care, learning, and judgment ordinarily used under the same or similar circumstances by members of their profession in that Defendants, acting individually and/or through their employees, agents and servants, were negligent in the following particulars to wit:

a.   Failed to provide him with prompt medical attention to his serious medical needs;

b.   Failed to promptly transfer him from Hutchinson Correctional Facility to a hospital for diagnosis and treatment;

c.   Seriously aggravated his medical condition by ignoring his medical condition for approximately eight months;

d.   Failed to appropriately diagnose his disease;

e.   Failed to appropriately, timely, or otherwise treat his disease;

f.   Failed to treat his disease as real;

g.   Failed to treat his serious medical need;

h.   Seriously aggravated his medical condition by failing to render meaningful medical care;

i.   Failed to respond appropriately to his medical emergency; and

j.   In other ways that Plaintiffs at this point are unaware of, but may become apparent over the course of discovery.

41

153.    After Decedent Marques Davis' abnormal April 11, 2017 MRI, Defendants Paul Corbier, M.D., Sohaib Mohiuddin, M.D., and Karl Saffo, M.D. were negligent in that said defendants failed and refused to order immediate hospitalization in light of a life threatening, serious medical need.

154.    As a direct and proximate result of the negligence of Defendants, Davis was caused injury that resulted in his death.

155.    As a direct and proximate result of the negligence of Defendants, Davis suffered and endured prior to his death significant physical and mental pain and suffering.

156.    As a direct and proximate result of the negligence of Defendants, Plaintiffs Shermaine Walker and I.D.F., as heirs at law of Marques Davis, have suffered mental anguish, suffering, and bereavement; loss of society, companionship, comfort, and protection; loss of marital care, attention, advice and counsel; loss of parental care, training, guidance and education; loss of financial support which Davis would have contributed for the remainder of his life; and reasonable funeral expenses.

WHEREFORE, Plaintiffs, Shermaine Walker and I.D.F., a minor, by and through her Next Friend and mother Erika Flowers, pray for judgment under Count V of this First Amended Complaint against all Defendants for a sum in excess of $75,000.00, and for any and all other and further damages as may be appropriate or to which they may be entitled at law.

### COUNT VI: NEGLIGENCE – SURVIVAL CLAIM (STATE LAW)
### All Defendants

COMES NOW the Estate of Marques Davis, by and through Plaintiff Shermaine Walker in her capacity as Special Administrator of the Estate of Marques Davis, and for Count VI of this First Amended Complaint against all Defendants, and state and allege as follows, states and alleges as follows:

42

157. The Estate of Marques Davis hereby incorporates each of the preceding paragraphs as though fully set forth herein.

158. As a direct and proximate result of negligence of all Defendants, Davis was injured and damaged in the following particulars:

    a. Davis suffered and endured prior to his death significant physical and mental pain and suffering;

    b. Davis was deprived of a material and statistically significant chance for survival.

WHEREFORE the Estate of Marques Davis, by and through Plaintiff Shermaine Walker in her capacity as Special Administrator of the Estate of Marques Davis, prays for judgment under Count VI of this First Amended Complaint against all Defendants for a sum in excess of $75,000.00, and for any and all other and further damages as may be appropriate or to which they may be entitled at law.

Dated this 27th day of October, 2017.

DEMPSEY & KINGSLAND, P.C.

/s/ Leland F. Dempsey
Leland F. Dempsey    KS #22410
Dempsey & Kingsland, P.C.
1100 Main Street, Suite 1860
Kansas City, Missouri 64105
Telephone: (816) 421-6868
Facsimile: (816) 421-2610
leland@dandklaw.com
**Attorney for Plaintiffs**

DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates Kansas City, Kansas, as the place of trial.

Dated this 27th day of October, 2017.

43

DEMPSEY & KINGSLAND, P.C.

  /s/ Leland F. Dempsey
Leland F. Dempsey        KS  #22410
Dempsey & Kingsland, P.C.
1100 Main Street, Suite 1860
Kansas City, Missouri 64105
Telephone: (816) 421-6868
Facsimile:  (816) 421-2610
leland@dandklaw.com
**Attorney for Plaintiffs**