IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHERMAINE WALKER, individually
and as administrator of the estate of
Marques Davis, deceased, et al.,

          Plaintiffs,

v.

CORIZON HEALTH, INC., formerly
known as Correctional Medical
Services, et al.,

          Defendants.

Case No. 17-2601-DDC-KGG

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiffs' Motion for Leave to File Second

Amended Complaint.  Doc. 133.  Plaintiffs seek leave to amend their First Amended Complaint[1]

to add allegations that, they contend, plead facts with greater specificity and correct the

deficiencies identified by the Tenth Circuit's decision holding that "the conclusory and

nonspecific allegations set out in the complaint" failed to state "a viable Eighth Amendment

deliberate indifference claim against [defendant Sohaib Mohiuddin, M.D.]" sufficient to

"overcome an assertion of qualified immunity at the motion-to-dismiss stage."  *Walker v.*

*Mohiuddin*, 947 F.3d 1244, 1248–49 (10th Cir. 2020).

Defendants oppose plaintiffs' motion in two separate filings.[2]  Defendants Corizon

Health Inc., Paul Corbier, M.D., Debra Lundry, and Jennifer Helus have filed a Response to

---

[1]      For ease, the court refers to plaintiffs' First Amended Complaint as "the Complaint" for the
remainder of this Order.

[2]      On March 17, 2020, the parties stipulated to dismissal of nine defendants named in the
Complaint.  Doc. 137.  So, the court dismissed those nine defendants from the case.  Doc. 138.  Other
than the John and Jane Doe defendants, only five defendants now remain in the case:  (1) Corizon Health,

plaintiffs' Motion. Doc. 139. It argues that the court should deny plaintiffs' motion because plaintiffs have failed to demonstrate good cause for seeking leave to amend the Complaint out of time, as Fed. R. Civ. P. 16 requires. Also, it argues, even if plaintiffs can demonstrate good cause, the court should deny plaintiffs' motion under Fed. R. Civ. P. 15 because of plaintiffs' undue delay in bringing the motion.

Defendant Sohaib Mohiuddin, M.D., also has filed a Response opposing plaintiffs' motion. Doc. 140. It adopts the arguments asserted by the other defendants. Also, it argues that plaintiff Shermaine Walker, in her capacity as the Administrator of Mr. Davis's estate, ("the Estate"), cannot reassert a claim under 42 U.S.C. § 1983 against Dr. Mohiuddin because the court already has dismissed that claim against Dr. Mohiuddin.[3] And, Dr. Mohiuddin argues, even if the Estate could reassert the § 1983 claim against him, the proposed amendment is futile because it still fails to state a plausible § 1983 claim against him.

Plaintiffs never filed a Reply. And the time for doing so has expired. *See* D. Kan. Rule 6.1(d)(1) (requiring parties to file replies to non-dispositive motions within 14 days after the filing of a response).

---

Inc., (2) Paul Corbier, M.D., (3) Debra Lundry, (4) Jennifer Helus, and (5) Sohaib Mohiuddin, M.D. All five defendants have responded to plaintiffs' motion seeking leave to amend. Defendants Corizon Health, Inc., Dr. Corbier, Ms. Lundry, and Ms. Helus filed a joint Response. Doc. 139. And Dr. Mohiuddin filed a separate Response. Doc. 140.

[3]     As the court explained in its February 28, 2019 Memorandum and Order, only one of the plaintiffs in this lawsuit has standing to sue defendants under § 1983. Doc. 100 at 12, 25–26. Plaintiff Shermaine Walker—in her capacity as the Administrator of Mr. Davis's estate—has standing to assert the § 1983 claim. *Id.* Plaintiff I.D.F., as Mr. Davis's heir, and plaintiff Shermaine Walker, in her individual capacity, lack standing to assert this claim. *Id.* As explained in more detail below, following the Tenth Circuit's instructions on remand, the court's February 11, 2020 Memorandum and Order dismissed the § 1983 claim asserted by plaintiff Shermaine Walker, in her capacity as the Administrator of Mr. Davis's estate, against Dr. Mohiuddin because it failed to state a claim. Doc. 130 at 1.

After considering the parties' arguments, the court grants plaintiffs' motion in part and denies it in part, for reasons explained below.  The court also orders plaintiffs to file their Second Amended Complaint, consistent with this Order, within 10 days of the filing of this Order.

## I.     Factual and Procedural Background

This lawsuit arises from the death of Marques Davis.  Plaintiffs allege that, on April 13, 2017, Mr. Davis died from a neurological condition.  At his death, Mr. Davis was in the custody of the Kansas Department of Corrections and housed at the Hutchinson Correctional Facility in Hutchinson, Kansas.

Plaintiffs Shermaine Walker (individually and as administrator of Mr. Davis's estate) and I.D.F. (as a minor and heir at law of Mr. Davis) bring this lawsuit against various defendants who, plaintiffs allege, denied Mr. Davis access to adequate and competent medical care to evaluate and treat a serious medical condition.  Plaintiffs assert that defendants' disregard for Mr. Davis's serious medical condition caused him to endure an untreated and progressively debilitating neurological condition for nearly eight months before dying a horrible and preventable death.

On October 16, 2017, plaintiffs filed this lawsuit asserting claims under § 1983 and the Kansas wrongful death statutes.  Doc. 1.  On October 27, 2017, plaintiffs filed an Amended Complaint as a matter of course under Fed. R. Civ. P. 15(a)(a), again asserting § 1983 and Kansas wrongful death claims.  Doc. 4.  On April 4, 2018, the court entered a Scheduling Order to govern the case through discovery.  Doc. 28.  Among other things, the Scheduling Order established an October 31, 2018 deadline for filing motions to amend the pleadings.  *Id.* at 8.

On June 29, 2018, Dr. Mohiuddin filed a Motion to Dismiss the Amended Complaint.  Doc. 41.  Dr. Mohiuddin's Motion to Dismiss asserted several arguments, including that the

court should dismiss the § 1983 claim against Dr. Mohiuddin in his individual capacity because he is entitled to qualified immunity.  Doc. 49 at 2.

On February 28, 2019, the court issued a Memorandum and Order granting Dr. Mohiuddin's Motion to Dismiss in part and denying it in part.  Doc. 100.  Relevant to the facts here, the court denied Dr. Mohiuddin's Motion to Dismiss based on qualified immunity because the court concluded that "the Complaint's allegations—specifically the severity of Mr. Davis's symptoms and Dr. Mohiuddin's failure to provide adequate medical care in response to those symptoms—are sufficient to state a plausible claim that Dr. Mohiuddin violated clearly established law by depriving Mr. Davis of a constitutional right."  *Id.* at 21.

On April 1, 2019, Dr. Mohiuddin filed a Notice of Interlocutory Appeal.  Doc. 108.  This Notice appealed the portion of the court's Order denying Dr. Mohiuddin's Motion to Dismiss based on qualified immunity.  *Id.*  On January 14, 2020, the Tenth Circuit reversed this court's decision denying Dr. Mohiuddin's Motion to Dismiss on qualified immunity grounds.  *Walker v. Mohiuddin*, 947 F.3d 1244 (10th Cir. 2020).  The Circuit found it "impossible, even viewing the allegations in the complaint generously in favor of the Estate, to conclude [Dr.] Mohiuddin's actions, as opposed to the collective or individual actions of other named healthcare providers, violated [Mr.] Davis's Eighth Amendment right to be free from the denial of critical medical care."  *Id.* at 1250.  So, the Circuit concluded, plaintiffs' Complaint failed to allege that Dr. Mohiuddin violated Mr. Davis's constitutional rights.  *Id.* at 1250–51.  The Circuit thus reversed this court's decision denying Dr. Mohiuddin's Motion to Dismiss on qualified immunity grounds and remanded the case to this court for further proceedings consistent with its opinion.  *Id.* at 1251.

On February 5, 2020, the Tenth Circuit issued its Mandate in Dr. Mohiuddin's appeal. Doc. 128.  Six days later, this court issued a Memorandum and Order reversing the portion of its Order that denied Dr. Mohiuddin's Motion to Dismiss the § 1983 claim (Count IV) for failing to state a plausible deliberate indifference claim to defeat Dr. Mohiuddin's qualified immunity defense.  Doc. 130.  Consistent with the Tenth Circuit's Mandate, the court granted Dr. Mohiuddin's Motion to Dismiss in part under Federal Rule of Civil Procedure 12(b)(6) for failing to state a viable § 1983 claim against him in Count IV.  *Id.* at 2.  Also, the court denied the Motion to Dismiss in part to the extent it sought to dismiss the state law claims asserted against Dr. Mohiuddin in Counts V and VI, for the reasons explained in the court's previous Order.  *Id.* (citing Doc. 100).  The court noted that plaintiffs, when Dr. Mohiuddin moved to dismiss the Complaint, never asked to amend their Complaint to supplement the § 1983 allegations against Dr. Mohiuddin.  *Id.* at 2 n.2.  Also, the court noted that no motion for leave to amend was pending; so, the court never considered whether the Circuit's holding would permit plaintiffs to cure the pleading deficiencies with an amended pleading.  *Id.*  Finally, the court ordered the parties to contact the Magistrate Judge assigned to the case to develop a revised scheduling order to govern the case after the Tenth Circuit's remand.  *Id.* at 3.

On February 25, 2020, Magistrate Judge Kenneth G. Gale conducted a telephone status conference with the parties.  Doc. 132.  During that conference, plaintiffs advised that they intended to file a new motion to amend their Complaint.  *Id.*  Judge Gale ordered plaintiffs to file any such motion by March 11, 2020.  *Id.*  Consistent with Judge Gale's directive, plaintiffs filed their Motion for Leave to File a Second Amended Complaint on March 11, 2020.  Doc. 133.  It seeks the court's leave under Fed. R. Civ. P. 15(a)(2) to file a Second Amended Complaint.

Plaintiffs have attached their proposed Second Amended Complaint to their Motion, as our local rule D. Kan. Rule 15.1(a)(2) directs them to do.  Doc. 133-1.

## II.    Legal Standard

Because plaintiffs seek leave to file their Second Amended Complaint after the Scheduling Order's deadline for amending pleadings has expired, the court must apply two Federal Rules of Civil Procedure.  The Tenth Circuit has instructed:  "After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).  The court cannot reach the Rule 15(a) analysis without first finding good cause under Rule 16 for modifying the scheduling order.  *Id.* at 1241.

Rule 16(b)(4) provides:  "A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  To meet the "good cause" requirement of Rule 16(b)(4), a movant must show he could not have met the scheduling order deadline to amend the pleadings despite "diligent efforts."  *Gorsuch*, 771 F.3d at 1240 (citation and internal quotation marks omitted).  Also, the good cause requirement "obligates the moving party to provide an adequate explanation for any delay."  *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (citation and internal quotation marks omitted).  "Good cause is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party."  *Id.* (citation and internal quotation marks omitted).  The "good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed."  *Gorsuch*, 771 F.3d at 1240.  Ultimately, the

decision to modify a scheduling order is within the court's sound discretion.  *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011).

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend the pleadings] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, the court may deny leave to amend on the grounds of undue delay, bad faith or dilatory motive by the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or the futility of the proposed amendment.  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The decision to grant leave to amend the pleadings under Fed. R. Civ. P. 15(a) rests within the district court's sound discretion.  *Id.* (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)).

## III.    Analysis

The court first addresses, below in Part A, whether plaintiffs have satisfied Rule 16's good cause requirement.  Concluding that plaintiffs have carried their burden, the court, in Part B, addresses whether it should grant plaintiffs leave to amend the Complaint under Rule 15.

### A.  Have plaintiffs demonstrated "good cause" under Rule 16 to justify seeking leave to amend after the Scheduling Order's deadline for filing motions to amend the pleadings has expired?

Plaintiffs acknowledge that they must establish good cause for seeking leave to amend their Complaint out of time.  Doc. 133 ¶ 4.  Plaintiffs assert that they seek leave to amend the Complaint to "conform with the Tenth Circuit Court of Appeals' opinion" and "plead facts with greater specificity as . . . indicated by the appellate court."  *Id.* ¶ 7.

Defendants respond that these reasons don't establish good cause because that standard requires plaintiffs to "prove 'that the deadline could not have been met with diligence.'"  Doc.

139 at 4 (quoting *McCormick v. Medicalodges, Inc.*, No. 05-2429-KHV, 2007 WL 471127, at \*2 (D. Kan. Feb. 8, 2007)).  Defendants argue that plaintiffs don't explain why they could not have sought leave to amend their Complaint before the deadline.  They contend, the Tenth Circuit relied on case law existing when plaintiffs filed their Complaint to find that the Complaint's collective and generalized allegations failed to overcome Dr. Mohiuddin's qualified immunity defense.  Thus, defendants argue, there is no reason plaintiffs couldn't have complied with that law when they filed their Complaint.  And, they contend, plaintiffs haven't shown why they didn't seek leave to amend to cure this problem with reasonable diligence.

As discussed above, Rule 16's "good cause" standard requires plaintiffs to show that they could not have met the scheduling order deadline to amend the pleadings despite "diligent efforts."  *Gorsuch*, 771 F.3d at 1240 (citation and internal quotation marks omitted).  This standard also requires them "to provide an adequate explanation for any delay."  *Tesone*, 942 F.3d at 988 (citation and internal quotation marks omitted).  The court finds that plaintiffs have satisfied the good cause requirement under the circumstances here.

Plaintiffs' proposed amendments seek to add more factual details to support their claims, including facts describing each individual defendant's involvement with Mr. Davis's medical treatment and his or her knowledge about Mr. Davis's medical condition based on that treatment. *See*, *e.g.*, Doc. 133-1 at 18 (Proposed Second Am. Compl. ¶ 87) (alleging that Mr. Davis received an MRI on April 11, 2017, the MRI results "indicated a wide-spread infection throughout [Mr.] Davis' brain and evidence of tonsillar herniation," and the MRI results "were scanned to both Dr. Corbier and Dr. Mohiuddin") (citing Doc. 136 at 47 (Exhibit A) (April 11, 2017 Progress Note documenting that APRN Nancy Ciskey scanned the MRI results to Dr. Corbier and Dr. Mohiuddin "for review")); *id.* (Proposed Second Am. Compl. ¶ 88) (alleging

that no one ordered Mr. Davis's immediate hospitalization after receiving the MRI results but, instead, he was moved back to his isolation cell within the infirmary by Corizon healthcare providers) (citing Doc. 136 at 75–76 (Exhibit A) (infirmary nursing records showing assessment and treatment of Mr. Davis at the jail on April 12, 2007,[4] leading up to medical staff finding him nonresponsive and transporting him to the hospital where he later died)).  Plaintiffs assert that this "greater specificity" is necessary to comply with the Tenth Circuit's decision.  Doc. 133 ¶ 7. Indeed, the Tenth Circuit held that the "collective and generalized allegations set out in the Estate's complaint are insufficient to overcome an assertion of qualified immunity at the motion-to-dismiss stage."  *Walker*, 947 F.3d 1249.  So, here, plaintiffs seek leave to amend to cure that deficiency by alleging more specific facts.

It was not until the Tenth Circuit issued its decision that plaintiffs were placed on notice that the Complaint's allegations did not suffice to state a plausible § 1983 claim against Dr. Mohiuddin.  Indeed, applying "the liberal pleading standards set forth by Rule 8(a)(2)," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this court previously "accept[ed] the Complaint's allegations as true and view[ed] them in plaintiffs' favor," and found that "the Complaint's allegations—specifically the severity of Mr. Davis's symptoms and Dr. Mohiuddin's failure to provide adequate medical care in response to those symptoms—[were] sufficient to state a plausible claim that Dr. Mohiuddin violated clearly established law by depriving Mr. Davis of a constitutional right."  Doc. 100 at 21.[5]  But the Tenth Circuit disagreed with the court's conclusion.  After remand, plaintiffs now are trying to rectify the pleading deficiencies that the

---

[4]       The record shows that a doctor was at the facility "on rounds" in the morning on this date.

[5]       Notably, none of the other 12 individual defendants originally named in the lawsuit ever filed a motion seeking to dismiss the Estate's § 1983 claims for this reason—*i.e.*, failing to allege specific facts about the individual defendants' actions sufficient to overcome a qualified immunity defense.

Tenth Circuit identified in its opinion.  This procedural history adequately explains why plaintiffs did not file their motion seeking leave to amend until after the Scheduling Order deadline had expired.

Also, the court doesn't fault plaintiffs for not filing their motion seeking leave to amend sooner than March 11, 2020.  Defendants criticize plaintiffs for filing their motion on that date, arguing that plaintiffs waited more than 30 days after the Tenth Circuit's Mandate was issued to file their Motion for Leave to Amend.  But, the court recognizes that the case was stayed—indeed, Dr. Mohiuddin prompted that stay (*see* Doc. 118)—pending his appeal to the Tenth Circuit.  Doc. 123.  The court formally lifted that stay in its February 11, 2020 Order.  Doc. 130.  And, it directed the parties to contact Judge Gale about further scheduling in the case.  Judge Gale ordered the parties to appear for a conference on February 25, 2020.  Doc. 131.  During that conference, plaintiffs advised that they intended to file a motion seeking leave to amend.  Doc. 132.  And, consistent with Judge Gale's order, plaintiffs filed their Motion for Leave to Amend on the court imposed deadline of March 11, 2020.

As our Circuit has explained, "[g]ood cause is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Tesone*, 942 F.3d at 988  (citation and internal quotation marks omitted).  Under these facts, the court finds that plaintiffs have "been generally diligent" in response to the Tenth Circuit's opinion reversing this court's decision denying Dr. Mohiuddin's Motion to Dismiss based on qualified immunity grounds.  *Id.*  They expressed their desire to file a motion for leave to amend at Judge Gale's scheduling conference.  And, plaintiffs filed the motion by the deadline Judge Gale imposed.  Also, the court finds that "the need for more time was neither foreseeable nor

[plaintiffs'] fault" because plaintiffs did not know that their pleadings were deficient until after the Tenth Circuit issued its opinion. Indeed, there was no way for plaintiffs to know because this court previously had found that their allegations sufficed to state a claim in its February 28, 2019 Memorandum and Order. *Id.* Finally, the court finds, "refusing to grant the continuance would create a substantial risk of unfairness to that party" because it would prevent plaintiffs from curing the pleading deficiencies that the Circuit identified in its opinion so that they can proceed to litigate their claims on the merits. For all these reasons, the court finds that plaintiffs have demonstrated the good cause Rule 16 requires for leave to amend after the Scheduling Order's deadline for filing motions for leave to amend the pleadings.

### B. Have plaintiffs demonstrated that the court should grant them leave to amend under Rule 15?

All defendants argue that the court should deny plaintiffs' Motion for Leave to File Second Amended Complaint based on undue delay. Also, all defendants argue that, if the court allows plaintiffs to file a Second Amended Complaint, it should prohibit them from attaching an exhibit to their pleading. Separately, Dr. Mohiuddin argues that plaintiffs' motion seeking leave to amend, to the extent it seeks to reassert the Estate's § 1983 claim against Dr. Mohiuddin, is procedurally improper because the court already has dismissed that claim based on the Tenth Circuit's Mandate. *See* Doc. 130. He also argues the proposed amendments are futile.

The court, below, first addresses the undue delay argument. Next, it considers whether it should allow the Estate to reassert the § 1983 claim against Dr. Mohiuddin. Finally, the court considers whether it should allow plaintiffs to attach to their Second Amended Complaint an exhibit containing medical records.

#### 1.  Undue Delay

Defendants contend that plaintiffs' proposed amendments to the Complaint include facts that they knew about when they filed the original Complaint in October 2017.  Defendants assert that the court should deny plaintiffs' request for leave to amend because they provide no reason for their delay in failing to include these facts in the original Complaint instead of the collective and generalized allegations that the original Complaint asserts and that the Tenth Circuit found insufficient.

The court rejects this argument for the same reasons that it finds plaintiffs have demonstrated good cause for seeking leave to amend their Complaint at this procedural stage. Although plaintiffs may have known about the facts that they seek leave to add to the Complaint when they filed this lawsuit, plaintiffs did not know that the facts they did allege in their original Complaint were deficient.  Indeed, none of the other individual defendants moved to dismiss the § 1983 claims for failing to state sufficient facts to overcome a qualified immunity defense. And, this court found that the allegations—taken as true and construed in plaintiffs' favor— plausibly alleged a § 1983 claim against Dr. Mohiuddin to overcome the qualified immunity defense.  Plaintiffs had no reason to seek leave to amend their Complaint to add more factual detail until the Tenth Circuit issued its decision holding that the Complaint fails to allege facts supporting a § 1983 claim sufficient to defeat Dr. Mohiuddin's qualified immunity defense.  For these reasons, plaintiffs have not engaged in undue delay when seeking leave to amend their Complaint.  And so, the court rejects defendants' argument that undue delay provides a reason to deny plaintiffs' Motion for Leave to File Second Amended Complaint.

## 2.  The Estate's § 1983 Claim Against Dr. Mohiuddin

Separately, Dr. Mohiuddin argues that plaintiffs' request for leave to amend their Complaint to reassert the Estate's § 1983 claim against Dr. Mohiuddin is improper.  Instead, Dr. Mohiuddin argues, plaintiffs should have moved the court for reconsideration of its February 11, 2020 Memorandum and Order (Doc. 130) that dismissed the § 1983 claim against Dr. Mohiuddin under Rule 12(b)(6) for failing to state a claim, consistent with the Tenth Circuit's Mandate. Because plaintiffs never made a motion for reconsideration, Dr. Mohiuddin argues, the court should deny their improper attempt to reassert the Estate's dismissed § 1983 claim.

Although the court has found no authority from the Tenth Circuit on this narrow issue, several federal courts in other jurisdictions have held that the proper procedure for seeking leave to reassert a dismissed claim is to file a motion for reconsideration of the dismissal order.  *See, e.g.*, *Hadid v. City of N.Y.*, 182 F. Supp. 3d 4, 12 (E.D.N.Y. 2016) (denying motion for leave to amend to reassert claims that court previously had dismissed because a "motion for reconsideration is the proper procedural mechanism for [p]laintiff to re-assert . . . previously dismissed claims"); *Ruiz v. Gap, Inc.*, No 07-5739 SC, 2009 WL 250481, at *3 (N.D. Cal. Feb. 3, 2009) (holding that plaintiff's "motion for leave to amend the Complaint to add a claim that was previously dismissed with prejudice is procedurally improper" and, instead, plaintiff "should have sought leave of the [c]ourt to file a motion for reconsideration of the dismissal"); *Montz v. Pilgrim Films & Television, Inc.*, No. 2:06-cv-07174-FMC-MANx, 2008 WL 11411617, at *3 (C.D. Cal. Aug. 15, 2008) (construing plaintiff's motion seeking "leave to amend to re-allege a previously dismissed claim" as "actually a request for reconsideration of the [c]ourt's earlier decision dismissing the claim with prejudice" and denying the request because plaintiffs had "made no showing of:  (1) a material difference in fact or law from that presented to the [c]ourt;

(2) emergence of new material facts or law occurring after the [c]ourt's decision; or (3) [ ] a

manifest showing of a failure to consider material facts presented to the [c]ourt before such

decision" as the local rule governing motions for reconsideration required (citations and internal

quotation marks omitted)); *In re Bisys Sec. Litig.*, 496 F. Supp. 2d 384, 386 (S.D.N.Y. 2007)

("Plaintiffs purport to be making this request under Fed .R. Civ. P. 15(a), relating to amended

pleadings.  Since . . . the claims against [defendant] were previously dismissed with prejudice,

the [c]ourt will construe plaintiffs' request as a motion under Fed. R. Civ. P. 54(b), seeking

revision of the dismissal with prejudice prior to final judgment being entered.").

Here, plaintiffs have filed no motion for reconsideration.  But, even if the court were to

construe plaintiffs' Motion for Leave to File Second Amended Complaint as a motion for

reconsideration of the court's dismissal of the § 1983 claim, Dr. Mohiuddin argues that such a

request is untimely.  Our court applies Rule 59(e) and D. Kan Rule 7.3's legal standards, "which

are essentially identical," to a motion seeking reconsideration of an order dismissing fewer than

all the claims in a lawsuit.  *See Ferluga v. Eickoff*, 236 F.R.D. 546, 549 (D. Kan. 2006).[6]  Under

Rule 59(e), a party must file a motion seeking to alter or amend "no later than 28 days after the

entry of judgment."  Fed. R. Civ. P. 59(e).  Under D. Kan. Rule 7.3(b), a party "seeking

reconsideration of non-dispositive orders must file a motion within 14 days after the order is

filed unless the court extends the time."  D. Kan. Rule 7.3(b).  Here, Dr. Mohiuddin argues,

---

[6]      The court recognizes—as Judge Lungstrum noted in *Ferluga*—that neither Rule 59(e) nor D.
Kan. Rule 7.3(b) directly apply here because the court hasn't entered a judgment and "[n]either the
Federal Rules of Civil Procedure nor this court's local rules recognize a motion for reconsideration when
it contemplates a dispositive order" without a judgment.  *Ferluga*, 236 F.R.D. at 548–49.  But, the court
nonetheless may consider a motion for reconsideration "based on the court's inherent power to review its
interlocutory orders."  *Id.* at 549; *see also* Fed. R. Civ. P. 54(b) (explaining an order that "adjudicates
fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action
[for] any of the claims or parties and may be revised at any time before the entry of a judgment
adjudicating all the claims and all the parties' rights and liabilities").

plaintiffs haven't satisfied either rule's time requirement because plaintiffs filed their Motion for Leave to Amend on March 11—29 days after the court entered its Order dismissing the § 1983 claim on February 11.

And, Dr. Mohiuddin argues, even if plaintiffs had made a timely motion for reconsideration, they offer no reasons why the court should reconsider the Order under one of the three reasons the local rule permits reconsideration: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." D. Kan. Rule 7.3(b); *see also Ferluga*, 236 F.R.D. at 549 (applying D. Kan. Rule 7.3(b) to a dispositive order).

Plaintiffs didn't submit a Reply. Thus, they've never responded to Dr. Mohiuddin's arguments that their Motion for Leave to File Second Amended Complaint is an improper motion for reconsideration that is both untimely and deficient because it asserts none of the appropriate grounds for reconsideration under our local rule. The court won't make arguments for plaintiffs where they've chosen not to submit a Reply. So, the court agrees with Dr. Mohiuddin that plaintiffs cannot reassert the Estate's § 1983 claim against him because the court already has dismissed that claim and plaintiffs never moved to reconsider that dismissal. Because the court denies plaintiffs leave to amend to reassert the Estate's § 1983 claim against Dr. Mohiuddin, the court need not address Dr. Mohiuddin's futility arguments.

### 3. Plaintiffs' Filing of Exhibit A (Doc. 136)

Finally, defendants object to the proposed Second Amended Complaint's incorporation of Exhibit A—a document that contains 75 pages of medical records. Doc. 139 at 5–6 (referring to Doc. 136 (Exhibit A)). Defendants argue that the court should prohibit plaintiffs from incorporating this Exhibit into the proposed Second Amended Complaint because Fed. R. Civ. P.

10(c) only permits incorporating a "written instrument" as part of a pleading but not extraneous documents. *Id.* (citing *Nkemakolam v. St. John's Military Sch.*, 876 F. Supp. 2d 1240, 1247 (D. Kan. 2012)). Thus, they ask the court to strike the incorporated Exhibit, if it otherwise allows plaintiffs to file the proposed Second Amended Complaint.

In *Nkemakolam*, Judge Lungstrum held that photographs and x-rays attached to the plaintiffs' complaint were immaterial, and so, he struck them under Fed. R. Civ. P. 12(f). 876 F. Supp. 2d at 1247. Judge Lungstrum observed the Federal Rules "consistently describe pleadings as containing 'statements' and 'allegations' and such language does not contemplate photographs or other objects." *Id.* at 1246 (first quoting Fed. R. Civ. P. 8; then quoting Fed. R. Civ. P. 9; then citing *Cabot v. Wal-Mart Stores, Inc.*, No. 11-0260 JB/RHS, 2012 WL 1378529, at *2–3, 7 (D.N.M. Apr. 10, 2012)). Also, Judge Lungstrum recognized that Rule 10(c) provides that "'[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.'" *Id.* at 1247 (quoting Fed. R. Civ. P. 10(c)). Courts that have considered Rule 10(c)'s parameters "have concluded that the Rules thus do not contemplate the attachment of exhibits, such as photographs, that are not written instruments." *Id.* And, under the facts presented, Judge Lungstrum found that "the x-ray and photograph attached to plaintiffs' complaint are not intended as assertions of fact or expressly incorporated into the body of the complaint; rather, they are clearly intended as evidence to support specific factual allegations by plaintiffs." *Id.* Thus, Judge Lungstrum's order struck the attachments. *Id.*

The court has identified at least two other cases from our court that have reached the same conclusion when a plaintiff has attached photographs as exhibits to a complaint. *See Lindsey v. Parnell Corp. Servs., U.S., Inc.*, No. 17-2016-JTM, 2017 WL 5572614, at *2 (D. Kan. Nov. 20, 2017) (ordering plaintiff to remove photographs when filing an amended complaint

because they "are evidentiary materials rather than a written statement within the contemplation of the rules"); *Rowan v. Sunflower Elec. Power Corp.*, No. 15-cv-9227-JWL-TJJ, 2015 WL 8024320, at *2 (D. Kan. Dec. 4, 2015) (striking 32 graphic photographs showing electrical burns plaintiff sustained because plaintiff's complaint contained a "vivid" description of his injuries and the photographs didn't add to the substance of the complaint).

But, here, the attached exhibits are not photographs. They are medical records. The court has found no Tenth Circuit case that addresses whether medical records qualify as a "written instrument" that a plaintiff may attach to a complaint to make it a part of the pleading under Rule 10(c). But, other courts expressly have permitted this practice. For example, the District of Connecticut has recognized that:

> A document satisfies the definition of a "written instrument" for the purposes of Rule 10(c) where it "evidences legal rights or duties or sets forth the legal basis for [a plaintiff's] claims." "To be sure," however, courts permit "consideration of other documents, apart from written instruments under Rule 10(c), at the motion to dismiss stage, such as documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." "Further, . . . a court may consider an integral document where the complaint relies heavily upon its terms and effect."

*Shouq v. Norbert E. Mitchell Co.*, No. 3:18-cv-00293 (CSH), 2018 WL 4158382, at *5 (D. Conn. Aug. 30, 2018) (quoting *Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015)). Applying that law to the facts presented in *Shouq*, the Connecticut federal court refused to strike documents plaintiff had attached to his Complaint—documents that included medical records. *Id.* at *6. The court found that plaintiff had "attached the documents at issue to his complaint in an effort to support his claims[,]" "[t]he complaint references the content of the documents," and the "documents may be admissible, have a bearing on the issues on the case, and do not appear to prejudice [d]efendant." *Id.* (citation omitted).

Likewise, plaintiffs here appear to have attached Exhibit A to their proposed Second Amended Complaint in an effort to support their claims against defendants.  The proposed Second Amended Complaint specifically refers to the medical records attached as Exhibit A in several places.  *See, e.g.*, Doc. 133-1 at 8–9, 18 (Proposed Second Am. Compl. ¶¶ 24, 26–28, 30–31, 35, 87–89).  The documents appear to bear on the issues of the case—*i.e.*, they memorialize and describe Mr. Davis's medical treatment at the Hutchison Correctional Facility.  And, defendants have identified no prejudice that permitting plaintiffs to attach these records would impose on them.

Other courts have reached similar conclusions, treating medical records attached as an exhibit to a complaint as a "written instrument" that is part of a pleading under Rule 10(c).  *See, e.g.*, *Fleming v. Laakso*, No. 18-CV-1527 (RA) (BCM), 2019 WL 959521, at *1 n.2 (S.D.N.Y. Feb. 5, 2019) (considering medical records attached to plaintiff's complaint as part of his pleading under Rule 10(c)); *Banks v. Boughton*, No. 16-cv-1349-pp, 2017 WL 2656186, at *4 (E.D. Wisc. June 20, 2017) (same); *Sheppard v. Hood*, No. 15-cv-0049 BAS (RBB), 2015 WL 8482757, at *4 (S.D. Cal. Dec. 7, 2015) (same); *Schneider v. Parker*, No. 6:09-cv-1089-Orl-35GJK, 2011 WL 722759, at *5 (M.D. Fla. Feb. 23, 2011) (same); *Bain v. Corr. Corp. of Am.*, No. CIV-08-332-F, 2008 WL 5142420, at *2 (W.D. Okla. Dec. 5, 2008) (same).

Following the guidance these cases provide, the court denies defendants' request to strike plaintiffs' incorporated medical records.  And, the court thus permits plaintiffs to file their Second Amended Complaint with Exhibit A attached.

## IV.    Conclusion

The court exercises its discretion under the liberal standard for granting leave to amend pleadings.  For reasons discussed above, the court concludes, in part, that it "should freely give

[plaintiffs] leave" to file their proposed Second Amended Complaint because it is warranted in the interest of justice. Fed. R. Civ. P. 15(a)(2). But, the court denies plaintiffs' request to file their proposed Second Amended Complaint to reassert the dismissed § 1983 claim against Dr. Mohiuddin. Also, plaintiffs' proposed Second Amended Complaint fails to cure other pleading deficiencies that the court previously identified in its February 28, 2019 Memorandum and Order (Doc. 100). The court thus orders plaintiffs to make the appropriate changes to their proposed Second Amended Complaint before filing it.

Specifically, the court orders plaintiffs to make the following changes to their proposed Second Amended Complaint:

- Plaintiffs must remove Dr. Mohiuddin as a defendant in Count IV, which asserts the dismissed § 1983 claim against him.

- Plaintiffs must remove any references to plaintiff I.D.F. or plaintiff Shermaine Walker in her individual capacity asserting a § 1983 claim against any defendants. The proposed Second Amended Complaint asserts § 1983 claims on behalf of both plaintiffs, *see* Doc. 133-1 at 23–37 (Count I–IV), but only the Estate can assert the § 1983 claims. *See* Doc. 100 at 12, 25–26 (dismissing plaintiffs' § 1983 claim against Dr. Mohiuddin (Count IV) to the extent plaintiff Shermaine Walker and plaintiff I.D.F. assert the claim against him in their individual capacities because only plaintiff Shermaine Walker—in her capacity as the Administrator of Mr. Davis's estate—has standing to assert this claim).

- Plaintiffs must remove the reference to plaintiffs Shermaine Walker asserting a wrongful death claim in Count V. The proposed Amended Complaint asserts Count V on behalf of both plaintiffs. *See* Doc. 133-1 at 37–39 (Count V). But, as

the court previously explained, only plaintiff I.D.F., as Mr. Davis's heir at law,

has standing to assert the wrongful death claim.  *See* Doc. 100 at 14–15, 26

(dismissing plaintiff Shermaine Walker's wrongful death claim against Dr.

Mohiuddin (Count V)—asserted either in her individual capacity or in her

capacity as Administrator of Mr. Davis's estate—because only plaintiff I.D.F. has

standing to assert this claim as Mr. Davis's heir at law).

The court orders plaintiffs to file their Second Amended Complaint—with these

changes—within 10 days of the date of this Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motion for

Leave to File Second Amended Complaint (Doc. 133) is granted in part and denied in part.

Plaintiffs must file their Second Amended Complaint, consistent with this Order, within 10 days

of the date of this Order.

**IT IS SO ORDERED.**

**Dated this 13th day of May, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**