IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SHERMAINE WALKER, individually and as administrator of the estate of Marques Davis, deceased, et al.,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **CORIZON HEALTH, INC., formerly known as Correctional Medical Services, et al.,** <br><br> **Defendants.** | Case No. 17-2601-DDC-KGG |

## MEMORANDUM AND ORDER

Defendant Paul Corbier, M.D. asks the court to reconsider its Memorandum and Order (Doc. 232) that denied in part Dr. Corbier's Motion for Summary Judgment. *See* Doc. 235. Defendant Corizon Health, Inc. ("Corizon") partially joins in that request for the portions of the court's summary judgment Order that denied Corizon's Motion for Summary Judgment. *See* Doc. 240.

For reasons explained, the court denies Dr. Corbier's Motion for Reconsideration (Doc. 235). All of Dr. Corbier's arguments supporting reconsideration are either (1) new arguments that he could have asserted (or explicitly declined to assert) in his summary judgment briefing, or (2) recycled arguments that he previously asserted on summary judgment and that the court specifically addressed and rejected in its summary judgment Order. The governing standard for motions to reconsider is clear. On a motion to reconsider, it "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citation omitted). Dr. Corbier's

Motion for Reconsideration improperly asks the court to revisit issues it already has considered and addressed in its summary judgment Order. And, he provides no reason for the court to reconsider its earlier decision. Thus, the court denies the Motion for Reconsideration. It explains why, below.

## I.     Factual and Procedural Background

This lawsuit arises out of the death of Marques Davis. At his death, Mr. Davis was an inmate in custody of the Kansas Department of Corrections (KDOC) and housed at the Hutchinson Correctional Facility in Hutchinson, Kansas. Plaintiffs Shermaine Walker (as administrator of Mr. Davis's estate) and I.D.F. (as a minor and heir at law of Mr. Davis) bring this lawsuit. They assert claims under 42 U.S.C. § 1983 and Kansas common law against Corizon and Dr. Corbier.

During Mr. Davis's incarceration, defendant Corizon contracted with the State of Kansas and KDOC to provide certain healthcare services to inmates in KDOC's custody, including inmates housed at the Hutchinson Correctional Facility. Doc. 196 at 2 (Pretrial Order ¶ 2.a.3.). And, during times relevant to this action, defendant Paul Corbier, M.D. was a physician, employed by Correctional Healthcare Associates of Kansas, who served as the Regional Medical Director for Corizon for the State of Kansas. *Id.* at 3 (Pretrial Order ¶ 2.a.4.); *see also* Doc. 187-5 at 1 (Corbier Aff. ¶ 1). On summary judgment, it was undisputed: Dr. Corbier never provided direct medical care to Mr. Davis during his incarceration. Doc. 187-5 at 2 (Corbier Aff. ¶ 5). But, Dr. Corbier was responsible for overseeing clinical activities. *Id.* at 1 (Corbier Aff. ¶ 2).

Dr. Corbier and Corizon moved for summary judgment against all claims plaintiffs' lawsuit assert against them. Docs. 186, 200. For plaintiffs' § 1983 claims, the court concluded that plaintiffs had come forward with admissible evidence supporting a triable issue whether Dr.

Corbier was deliberately indifferent to Mr. Davis's serious medical needs sufficient to hold him liable in his individual capacity.  Doc. 232 at 63.  But, the court granted summary judgment against plaintiffs' § 1983 claims against Dr. Corbier premised on a supervisory liability theory, as well as plaintiffs' § 1983 claims against Corizon.  *Id.* at 63, 68.  Also, the court denied summary judgment against plaintiffs' Kansas common law claims for wrongful death and negligence.  *Id.* at 75.

Dr. Corbier asks the court to reconsider the portions of its Order that denied summary judgment against plaintiffs' § 1983 and Kansas common law claims.  Doc. 235.  Corizon joins in Dr. Corbier's motion for the portion of the summary judgment Order denying summary judgment against plaintiffs' Kansas common law claims.  Doc. 240.  Plaintiffs oppose both Dr. Corbier's motion and Corizon's joinder request.  Docs. 244, 245.  The court addresses the parties' arguments, below.

   **II.   Legal Standard**

The grounds "warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (discussing Fed. R. Civ. P. 59(e)'s requirements); *see also* D. Kan. Rule 7.3(b) (explaining reconsideration of non-dispositive orders must be based on "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice").  "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete*, 204 F.3d at 1012 (citation omitted).  But, it "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* (citation

omitted); *see also Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (explaining that, on a Rule 59(e) motion, "courts will not address new arguments or evidence that the moving party could have raised before the decision issued"). A district court has discretion when deciding whether to grant or deny a motion to reconsider. *Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988).

**III.   Analysis**

Dr. Corbier's motion argues that the court should reconsider its summary judgment Order "in order to correct clear error and prevent manifest injustice." Doc. 236 at 19. Dr. Corbier argues that the court erred by denying summary judgment against plaintiffs' § 1983 claims. Also, Dr. Corbier asserts, and Corizon joins in asserting, that the court erred by denying summary judgment against plaintiffs' Kansas claims. The court first discusses Dr. Corbier's arguments to reconsider the portion of the Order denying summary judgment to Dr. Corbier on the § 1983 claim. Next, it turns to the arguments to reconsider the part of the Order denying summary judgment against the Kansas common law claims.

**A.   Section 1983 Claim**

Dr. Corbier argues that the court "applied an incorrect legal standard and misapprehended the facts" when it denied summary judgment to Dr. Corbier on plaintiffs' § 1983 claim for violating the Eighth Amendment. Doc. 236 at 2. Dr. Corbier makes three arguments to support reconsideration.

*First*, Dr. Corbier argues that the court treated the objective and subjective elements of an Eighth Amendment claim "as entirely separate issues" which "is not an accurate reading of the controlling law on Eighth Amendment medical claims." *Id.* There is more than one problem with Dr. Corbier's first argument. For starters, his argument directly contradicts the way our

4

Circuit explains the standard. The Circuit repeatedly has described the "deliberate indifference" test governing Eighth Amendment complaints as a "two-pronged inquiry," consisting of "an objective and subjective component." *Self v. Crum*, 439 F.3d 1227, 1230–31 (10th Cir. 2006) ("Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension. *In addition*, under the subjective inquiry, the prison official must have a sufficiently culpable state of mind." (emphasis added) (citation and internal quotation marks omitted)); *see also Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 647 (10th Cir. 2017) ("The Supreme Court has established a two-pronged test for deliberate indifference claims. Under this test, a plaintiff must satisfy an objective prong and a subjective prong." (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Sparks v. Singh*, 690 F. App'x 598, 604 (10th Cir. 2017) (noting that the Circuit was "careful to maintain the critical distinction between the two" components for proving deliberate indifference).

Also, the Supreme Court and our Circuit routinely address the two prongs separately in its analysis of deliberate indifference claims. *See Helling v. McKinney*, 509 U.S. 25, 35–37 (1993) (explaining that an Eighth Amendment violation requires a prisoner to "prove both the subjective *and* objective elements" and analyzing the two inquires separately (emphasis added)); *see also Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1044–46 (10th Cir. 2022) (explaining that "the focus of the objective component is the seriousness of the plaintiff's alleged harm, while the focus of the subjective component is the mental state of the defendant with respect to the risk of that harm" and then addressing the objective component separately from the subjective component); *McCowan v. Morales*, 945 F.3d 1276, 1291–92 (10th Cir. 2019) (describing the Supreme Court's "two-pronged test for deliberate indifference claims" to include "an objective prong and a subjective prong[,]" and analyzing the deliberate indifference claim by

"[t]urning first to the objective prong," and then "[n]ext, turning to the subjective prong" (citation and internal quotation marks omitted)). That's precisely what the court did in its summary judgment Order. Doc. 232 at 43–47. Dr. Corbier fails to show the court applied an incorrect legal standard.

Also, Dr. Corbier fails to show that the court clearly erred by concluding that the summary judgment facts presented a triable issue of an objectively serious medical need. Indeed, Dr. Corbier chose not to argue the objective component on summary judgment. *See id.* at 44 (noting that Dr. Corbier wasn't conceding the objective component but explaining that he only was seeking summary judgment under the subjective prong and not the objective prong (citing Doc. 187 at 19–20)). He made that decision, not the court. And, it's simply not appropriate for Dr. Corbier to use a reconsideration motion to "advance arguments that could have been raised in prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012 (citation omitted).

In any event, Dr. Corbier complains about the portion of the court's Order where it described that the summary judgment facts about Mr. Davis's symptoms spanning a nine-month period and concluded that a "reasonable jury certainly could find from these facts that Mr. Davis's symptoms were sufficiently serious to meet the objective prong of the deliberate indifference test." Doc. 232 at 44. Dr. Corbier argues that this ruling is "significant" because it doesn't identify exactly what symptoms Mr. Davis was reporting, when he reported them, what was reported to Dr. Corbier, when it was reported to Dr. Corbier, or "that Dr. Corbier knew of all of them." Doc. 236 at 4 (emphasis omitted). This argument conflates the objective prong with the subjective prong. When the court addressed the subjective prong, it explicitly addressed the symptoms that medical staff had reported to Dr. Corbier, when they reported them to him, and

how Dr. Corbier responded to those reports. This court did so when it analyzed the question whether Dr. Corbier was deliberately indifferent to Mr. Davis's medical needs because he "knew of a substantial risk of harm to Mr. Davis and ignored that risk." Doc. 232 at 53–57; *see also id.* at 55 ("For the next six months, Dr. Corbier received many more reports about Mr. Davis that continued to document weakness in his lower extremities, trouble walking, and numbness." (first citing Doc. 209-11 at 9, 27–28; then citing Doc. 201-4 at 79–80, 86–87)). Dr. Corbier hasn't shown that the court clearly erred or misapprehended the facts when it addressed the objective component. So, the court won't reconsider its summary judgment Order based on Dr. Corbier's first argument.

*Second*, Dr. Corbier asserts that the court erred by failing to conclude that the summary judgment facts establish that medical providers merely misdiagnosed Mr. Davis's condition, which doesn't rise to the level of subjective deliberate indifference. But, this argument merely rehashes an argument Dr. Corbier asserted in his summary judgment papers, but that the court declined to adopt. Indeed, Dr. Corbier concedes—as he must—that the court "acknowledge[d] controlling authority that holds a claim of misdiagnosis will not sustain an Eighth Amendment claim" and "acknowledge[d] the cases city by Dr. Corbier to that effect." Doc. 236 at 6. But, Dr. Corbier disagrees with the court's conclusion that "these cases were distinguishable" because the cases involved a misdiagnosis while Mr. Davis never received a definitive diagnosis for his symptoms. *Id.* Dr. Corbier criticizes the court for failing to cite "to any legal authority suggesting that there is a meaningful distinction between having no diagnosis and having the wrong diagnosis for purposes of an Eighth Amendment analysis" and asserts that the court erred by "plac[ing] considerable emphasis on whether the providers collectively reach the *right* diagnosis, which is not a material distinction in an Eighth Amendment claim." *Id.* at 6–7. Also,

7

Dr. Corbier asserts the court "incorrectly applied the controlling law in finding a material distinction between misdiagnosis and a lack of explanatory diagnosis." *Id.* at 9.

Dr. Corbier's second argument takes the court's analysis of the misdiagnosis cases out of context and incorrectly accuses the court of applying a legal standard that differentiates between a misdiagnosis and no diagnosis. The court agrees with plaintiffs' description of Dr. Corbier's argument: it's a "mischaracterization of this Court's analysis." Doc. 244 at 9. The portion of the court's Order noting that medical providers found "no diagnosis" for Mr. Davis's symptoms merely was explaining how the facts of this case differ from Dr. Corbier's cited cases involving a "misdiagnosis." Importantly, Dr. Corbier's cited cases involved medical staff diagnosing the prisoner with a particular condition, treating that prisoner for that condition, and then, later, learning that another diagnosis was causing the prisoner's symptoms. Doc. 232 at 48–50 (first citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); then citing *Spencer v. Abbott*, 731 F. App'x 731, 742–45 (10th Cir. 2017); and then citing *Childress v. Harms*, 449 F. App'x 758, 761–62 (10th Cir. 2011); then citing *Self*, 439 F.3d at 1234). A jury could view the facts like the ones in Dr. Corbier's cases, *i.e.*, involving mere misdiagnoses. But, that's not the standard that the court must apply on summary judgment. Instead, when it ruled the summary judgment motion, the court was required to "view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation and internal quotation marks omitted). Here, that's plaintiffs—not Dr. Corbier.

Applying that summary judgment standard, the court concluded that the summary judgment facts presented a triable issue whether medical staff merely misdiagnosed Mr. Davis's condition (which wouldn't rise to the level of deliberate indifference) or whether medical staff "'respond[ed] to an obvious risk with treatment that is patently unreasonable," from which "'a

8

jury may infer conscious disregard[,]'" *Reneau v. Cardinas*, 852 F. App'x 311, 317 (10th Cir. 2021) (quoting *Self*, 439 F.3d at 1232). *See* Doc. 232 at 50–52.

Highly summarized, the summary judgment facts established that Mr. Davis complained in July 2016, to medical staff about numbness in his feet. Doc. 201-6 at 25. By September 2016, Mr. Davis was complaining of back pain, leg pain, numbness, falling, constipation, headaches, and chest pain. Doc. 201-5 at 59–67, 69–84, 85–87; Doc. 201-6 at 1, 3, 6–8; Doc. 187-11 at 1. While medical staff ordered that Mr. Davis receive an EMG and an MRI of his lumbar spine, Doc. 201-5 at 23, Doc. 201-4 at 80, these tests returned normal results and didn't produce a diagnosis for the neurological symptoms Mr. Davis was reporting, Doc. 201-5 at 17, Doc. 201-4 at 78.

In January 2017, Mr. Davis continued complaining about continued neurological problems—including that he was passing out and fainting; having weakness, extremity tingling/numbness, and difficulty ambulating; and experiencing constipation. Doc. 201-4 at 68–77. These symptoms—among others—continued through April 2017. The court thoroughly cited them in its summary judgment Order. Doc. 232 at 19–20, 22–29. In February 2017, Dr. Corbier denied a request for Mr. Davis to receive a neurologist consultation. Doc. 201-4 at 64. Dr. Corbier's response to this request proposed an "alternative treatment plan" to "[w]ork up negative" and "continue to monitor neurologic sig[.]" *Id.* Mr. Davis's symptoms continued to deteriorate, with medical staff documenting continued problems with walking, slurring and stuttering of speech, and bizarre changes in his behavior. Doc. 201-3 at 19, 30, 36, 41–42, 53, 69, 73, 80, 84–85; Doc. 201-4 at 2. It wasn't until medical staff held a multidisciplinary team meeting on March 31, 2017, that a decision was made to "submit for Neuro Consult ASAP." Doc. 201-3 at 2. Despite the "ASAP" notation, Dr. Corbier didn't approve the request for six

more days, on April 6, 2017.  Doc. 209-11 at 29.  And, staff initially scheduled the appointment to occur in June—more than two months after making the "ASAP" notation.  Doc. 209-19 at 148 (Corbier Dep. 148:2–16).  Later, staff rescheduled the appointment for April 21, Doc. 209-11 at 29, and finally secured the appointment for Mr. Davis on April 11, Doc. 201-2 at 7.

As the court's summary judgment Order explained, prevailing precedent permits a jury to infer deliberate indifference "'in cases where the need for additional treatment or referral to a medical specialist is obvious,' such as when a medical professional . . . 'recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral'[.]"  Doc. 232 at 50–51 (quoting *Reneau*, 852 F. App'x at 317 (quoting *Self*, 439 F.3d at 1232)).  The court concluded that a "reasonable jury could infer as much here—that medical staff recognized that they were unable to treat the patient (indeed, Mr. Davis's medical records support that fact)—and that they unnecessarily delayed referral for a neurology consultation that included imaging of the brain until April 201[7]—many months after Mr. Davis began complaining of symptoms and several weeks after his symptoms escalated to include bizarre and incoherent behaviors."  *Id.* at 51.  Also, the court cited Tenth Circuit cases involving "similar facts—*i.e.*, ones involving a prisoner's medical condition that grew progressively worse over time while under the care of medical providers" where the Circuit found the subjective component of the deliberate indifference test was satisfied.  *Id.* at 51–52 (first citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1278–79 (10th Cir. 2001); then citing *Est. of Booker v. Gomez*, 745 F.3d 405, 431–32 (10th Cir. 2014)).

The court's review of the admissible evidence in the summary judgment record established those facts as the facts in the light most favorable to plaintiffs—the nonmoving

10

parties. All of Dr. Corbier's arguments ignore this standard, viewing the summary judgment record in his favor—*i.e.*, that Mr. Davis "receive[d] evaluations from specialists," Doc. 236 at 6, and a "plethora tests *were* approved and performed," *id.* at 7; and "a series of diagnoses were reached only to be reconsidered, and there were also periods were the constellation of symptoms did not appear to fit a known diagnosis[,]" *id.* at 9. That just isn't the standard on summary judgment. Instead, viewing the facts in plaintiffs' favor, a reasonable jury could find deliberate difference here based on obvious need for additional treatment or a referral to a medical specialist but nevertheless Dr. Corbier declined or unnecessarily delayed the referral. Dr. Corbier's second reconsideration argument fails to show that the court committed clear error.

*Third*, Dr. Corbier argues that the court misapprehended plaintiffs' claims and the factual record when it concluded that the summary judgment record presented a triable issue whether Dr. Corbier failed to fulfill his gatekeeping role, thus presenting a jury question whether he is liable for subjective deliberate indifference for denying Mr. Davis access to medical care. As plaintiffs note, Dr. Corbier criticizes just one portion of the court's analysis of Dr. Corbier's gatekeeping role. Dr. Corbier complains that the summary judgment facts about two diagnostic tests he didn't approve for Mr. Davis can't reasonably support a finding of deliberate indifference. Doc. 236 at 9–15. But as plaintiffs correctly respond, the court's discussion of these two tests was just part of the analysis of the gatekeeping role. *See* Doc. 232 at 53–57. This analysis ultimately concluded that a triable issue existed whether Dr. Corbier failed to fulfill his gatekeeping role because he knew of a serious risk of harm to Mr. Davis and ignored that risk. *See id.* Dr. Corbier's arguments asking the court to reconsider this part of the Order merely rehash arguments that Dr. Corbier already asserted on summary judgment, or they are ones he never asserted in his summary judgment briefing. And, that's not proper on a motion to

reconsider. *See Servants of the Paraclete*, 204 F.3d at 1012 (explaining it "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing" (citation omitted)).

Also, Dr. Corbier plainly mischaracterizes the court's discussion of Dr. Corbier's refusal to order two tests by asserting that the court never "identif[ied] what symptoms suggestive of an objectively serious medical need—a condition so severe that even a lay person would recognize the risk of harm—were reported to Dr. Corbier at the time." Doc. 236 at 13. That's just not correct. Instead, Dr. Corbier jumps back to the court's discussion of Mr. Davis's symptoms in the *objective* prong analysis. *See id* (citing Doc. 232 at 44). And, he contends, the court "misunderstood the evidence, such that it concluded that this entire constellation of symptoms was reported *to Dr. Corbier*, and that these reports occurred *before* this consultation was denied." *Id.* Dr. Corbier's argument here isn't impressive as it completely ignores the Order's explicit citation to the summary judgment facts (on pages 55 and 56) identifying the symptoms that medical staff reported *to Dr. Corbier*. *See* Doc. 232 at 55 (noting that "Dr. Corbier first received notice of Mr. Davis's symptoms when Dr. Saffo reported that Mr. Davis was experiencing leg and muscle weakness and walking with an obvious limp" (citing Doc. 209-11 at 3)); *id.* (explaining that "Dr. Corbier received many more reports about Mr. Davis that continued to document weakness in his lower extremities, trouble walking, and numbness" (first citing Doc. 209-11 at 9, 27–28; then citing Doc. 201-4 at 79–80, 86–87)); *id.* at 56 (explaining that "medical providers had *reported to Dr. Corbier* that Mr. Davis was experiencing symptoms consistent with a neurological disorder including muscle weakness, numbness, back pain, and walking with a limp" (emphasis added) (first citing Doc. 209-11 at 9, 27–28; then citing Doc. 201-4 at 79–80, 86–87)); *id.* (noting that, in February 2017, Dr. Mohiuddin asked Dr. Corbier to

12

approve a neurological consult for Mr. Davis's lower extremity weakness and documented that "Mr. Davis still was walking with an 'inconsistent limp' and that he continued to have numbness in his toes" (citing Doc. 201-4 at 64–65)).

From these facts—explicitly citing the summary judgment record—the court concluded that a "reasonable jury could find that Dr. Corbier's refusal to order these tests—in light of the symptoms documented and for the duration Mr. Davis had experienced them—amounted to deliberate indifference because Dr. Corbier 'delay[ed] or refus[ed] to fulfill [his] gatekeeper role' for other medical personnel to examine and treat Mr. Davis's condition." *Id.* at 56–57 (first quoting *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000); then citing *Burke v. Regalado*, 935 F.3d 960, 994–95 (10th Cir. 2019)).  Dr. Corbier's third argument doesn't show any clear error.

Also, Dr. Corbier's motion spends several paragraphs arguing that the court's decision contradicts the Supreme Court's holding in *Estelle v. Gamble*, 429 U.S. 97 (1976).  Dr. Corbier's summary judgment motion extensively argued that the "allegations in this case are substantially similar to those in *Estelle*, which the Supreme Court held were insufficient to state an Eighth Amendment claim."  Doc. 187 at 18, 21–23.  The court's summary judgment Order recited and applied *Estelle*'s governing standard.  Doc. 232 at 43.  And that Order explained that *Estelle* differs from this case because, here, a jury could infer from the summary judgment facts that Mr. Davis's condition progressed and worsened such that the "need for additional treatment or referral to a medical specialist is obvious," but medical providers "nevertheless decline[d] or unnecessarily delay[ed] referral[,]" *id.* at 48–51 (citations and internal quotation marks omitted).  Dr. Corbier's arguments about *Estelle* revisit an issue the court already has considered carefully

13

and addressed explicitly in its summary judgment Order. That's simply "not appropriate" on a motion to reconsider. *Servants of the Paraclete*, 204 F.3d at 1012 (citation omitted).

In sum, none of Dr. Corbier's three arguments justify his request for the court to reconsider its Order denying summary judgment against plaintiffs' § 1983 claims asserted against Dr. Corbier in his individual capacity.

### B. Kansas Common Law Claims

Next, both Dr. Corbier and Corizon ask the court to reconsider the portion of its Order denying summary judgment against plaintiffs' Kansas common law claims. Specifically, defendants assert that the court misapplied Kansas law by concluding that the expert reports offered by plaintiffs' experts provide sufficient expert testimony that Dr. Corbier or Corizon medical providers breached the standard of care.

When moving for summary judgment, Dr. Corbier cited several Kansas cases discussing the requirement of expert testimony to support a negligence claim. Doc. 187 at 34–36; Doc. 201 at 38–40. And, they argued, plaintiffs' expert reports fail to provide sufficient expert testimony because they don't identify how Dr. Corbier or Corizon nursing staff breached the standard of care. Doc. 187 at 35–36; Doc. 201 at 40–41. The court ruled that defendants' summary judgment arguments "read the experts' opinions far too narrowly." Doc. 232 at 70. And, citing the Kansas Supreme Court's instruction that an expert's opinion need not use "'magic' words[,]" *Nunez v. Wilson*, 507 P.2d 329, 334 (Kan. 1973), the court concluded that "taken as a whole, the expert opinions provide sufficient expert testimony that Mr. Davis's medical providers breached the standard of care by failing to examine and assess Mr. Davis properly and that these failures caused Mr. Davis's damages because he never received a correct diagnosis (before he died) or treatment for his condition." *Id.* at 71.

Defendants argue that this conclusion erred. In doing so, Dr. Corbier cites none of the cases that he cited in his summary judgment briefing. And, Corizon cites just one that it cited in its summary judgment briefing. Instead, both defendants rely on a list of entirely new cases that they never cited or otherwise presented to the court on summary judgment.

Corizon asserts that the briefing on the motion to reconsider first cites *Nunez*—a case that the court cited in its summary judgment Order—and then supplies the new case law only to explain why *Nunez* doesn't apply to the issue here. What Corizon overlooks, however, is that plaintiffs also cited *Nunez* in its Oppositions to the summary judgment motions. Doc. 209 at 107; Doc. 210 at 122. And neither of defendants' Replies addressed *Nunez* or explained why that case didn't apply here. *See generally* Docs. 224 & 227. As the Supreme Court has instructed, on a motion to reconsider, "courts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020); *see also United States v. Warren*, 22 F.4th 917, 927 (10th Cir. 2022) (explaining that motions to reconsider "'should not be used to revisit issues already addressed or advance arguments that could have been raised earlier'" (quoting *United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015)). And, as our Circuit has explained, a "'motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed.'" *Warren*, 22 F.4th at 927 (quoting *Huff*, 782 F.3d at 1224). Because defendants' motion to reconsider the portion of the court's Order denying summary judgment against the Kansas law claims asks the court to revisit an issue already addressed and advances new arguments that they could have raised earlier, the court denies defendants' request that the court reconsider that portion of the court's Order.

## IV.     Conclusion

For reasons explained above, the court denies Dr. Corbier's Motion for Reconsideration (Doc. 235).[1]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Paul Corbier, M.D.'s Motion for Reconsideration of the Court's Order Denying Summary Judgment (Doc. 235) is denied.

**IT IS SO ORDERED.**

**Dated this 13th day of May, 2022, at Kansas City, Kansas.**

> s/ Daniel D. Crabtree
> **Daniel D. Crabtree**
> **United States District Judge**

---

[1] Also, Corizon's Notice of Partial Joinder of Dr. Corbier's Motion for Reconsideration of Portions of the Court's Order Denying Summary judgment (Doc. 240) doesn't assert any arguments that convince the court that it should reconsider any portions of its summary judgment Order.